LAURA STALEY, Admx., Plaintiff in Error, *vs.* ILLINOIS
CENTRAL RAILROAD COMPANY, Defendant in Error.

*Opinion filed June 24, 1915.*

1. RAILROADS—*when injury is received while employee was en-
gaged in inter-State commerce.* Where a machinist employed by
a railroad company is sent by his foreman to repair an engine en-
gaged in switching and handling inter-State commerce, and while
on his way to do the work he is struck by another engine engaged
in switching all classes of freight, both inter-State and intra-State,
the injury is received while the employee was engaged in inter-
State commerce.

2. SAME—*what is the subject or field covered by the Federal
Employers' Liability act.* The subject or field covered by the Fed-
eral Employers' Liability act is the employer's liability to em-
ployees for injuries received by them while engaged in inter-State
transportation by rail, and such act therefore excludes all other
liability for such injuries imposed by the common law or the stat-
utes of the various States.

3. SAME—*the Workmen's Compensation act does not apply to
injuries received in inter-State commerce.* The Illinois Work-
men's Compensation act has no application to injuries received by
a railroad employee while engaged in inter-State commerce, but
the matter of the employer's liability in such case is exclusively
governed by the Federal Employers' Liability act, regardless of
the question of negligence or want of negligence of either employer
or employee.

4. SAME—*Illinois Workmen's Compensation act is not within
section 5 of Federal Employers' Liability act.* The Illinois Work-
men's Compensation act is not within the contemplation of sec-
tion 5 of the Federal Employers' Liability act, which provides that
any contract, rule, regulation or device whatsoever, the purpose of
which shall be to enable a common carrier to exempt itself from
liability under the act, shall to that extent be void, but that a com-
mon carrier, in any suit brought against it under the act, may set
off any sum it has contributed or paid to any insurance relief,
benefit or indemnity that may have been paid to the employee on
account of the injury or death.

WRIT OF ERROR to the Appellate Court for the Fourth
District;—heard in that court on appeal from the Circuit
Court of Marion county; the Hon. THOMAS M. JETT,
Judge, presiding.

FRANK F. NOLEMAN, and JUNE C. SMITH, for plaintiff in error.

W. W. BARR, C. E. FEIRICH, and KAGY & VANDERVORT, (W. S. HORTON, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a proceeding under the Workmen's Compensation law of this State, (Laws of 1911, p. 315,) commenced by petition filed by plaintiff in error in the circuit court of Marion county for compensation for the death of her husband, who was run over and killed by one of defendant in error's switch engines in its yards near Centralia, Illinois. The defendant in error was served with notice, and, after certain motions had been made, filed an amended answer, wherein it set up that the cause stated in the petition was not comprehended within the meaning of said Workmen's Compensation act but was within the scope and meaning of the Federal Employers' Liability act. The trial court found in favor of plaintiff in error and entered judgment in her favor for $3500, payable in a lump sum. From this judgment defendant in error appealed to the Appellate Court. That court affirmed the judgment of the trial court, except that it was held that under the Workmen's Compensation act it should not be for the full amount of $3500 but should have been commuted at its present value. Plaintiff in error thereupon brought the cause to this court by petition for *certiorari.*

Several questions are raised and argued in the briefs. It is first necessary to consider and decide the question whether there can be a recovery in this cause under the Illinois Workmen's Compensation act, so called, or whether the cause is comprehended within the meaning and scope of the Federal Employers' Liability act and recovery can only be had under this last named law. If the position of defendant in error on this point, raised by filing cross-errors

in this court, is sustained, it will be unnecessary to consider the other questions involved.

Counsel for defendant in error insist in their amended answer that plaintiff in error's intestate was engaged, at the time of his fatal injury, in inter-State commerce and that therefore the Federal Employers' Liability act controls, superseding all State laws on the subject. The evidence showed that the deceased was working, on the day of the injury, March 28, 1913, in defendant in error's switch or terminal yards near Centralia, Illinois, as a machinist, his duty being to repair the switch engines in the yards. He was sent by his superior officer to repair the whistle-rod on an engine engaged in switching and handling inter-State commerce. As he went down a switch track he saw the engine coming toward him and stepped out of its way onto another track immediately in front of another moving engine, by which he was knocked down and killed instantly. The last named engine was also engaged in switching all classes of freight, inter-State as well as intra-State. Counsel for defendant in error contend, and counsel for plaintiff in error concede, that the deceased was at the time of the accident engaged in inter-State commerce. On the evidence as presented in the record before us no other conclusion can be reached under the holdings of the United States Supreme Court. (*Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.* 229 U. S. 146; *St. Louis, San Francisco and Texas Railway Co.* v. *Seale,* 229 id. 156; *Missouri, Kansas and Texas Railroad Co.* v. *United States,* 231 id. 112.) The Federal Employers' Liability act will therefore control if it covers the identical subject matter or the same field as that covered by the Illinois Workmen's Compensation act.

Counsel argue at length as to whether the Workmen's Compensation act imposes a direct burden upon inter-State commerce. In our judgment that is not the decisive question here. The general principles governing the exercise of Federal authority, when inter-State commerce is affected,

have been firmly established by the decisions of the United States Supreme Court. The power of Congress to regulate commerce among the several States is supreme and plenary under the constitution. The reservation to the States to legislate on questions affecting inter-State commerce is only of that authority which is consistent with and not opposed to the grant of Congress, which extends to every instrumentality or agency by which inter-State commerce may be carried on. The decisions hold that with respect to certain subjects embraced within the grant of the constitution which are of such a nature as to demand that if regulated at all their regulation should be prescribed by a single authority the power of Congress is exclusive, while in other matters admitting of diversity of treatment, according to the special requirements of local conditions, "the States may act within their respective jurisdictions until Congress sees fit to act, and when Congress does act, the exercise of its authority overrides all conflicting State legislation." (*Simpson* v. *Shepard,* 230 U. S. 352.) The doctrine that the States can not, under any guise, impose direct burdens upon inter-State commerce forms the basis of the foregoing classification. Within certain limitations there remains to the States, until Congress acts, a wide range for the exercise of the power appropriate to territorial jurisdiction although inter-State commerce may be affected. Included within these limitations are those matters of a local nature as to which it is impossible to derive from the constitutional provisions an intention that they should go uncontrolled pending Federal legislation. It is therefore "competent for a State to govern its internal commerce, to provide local improvements, to create and regulate local facilities, to adopt protective measures of a reasonable character in the interest of the health, safety, morals and welfare of its people, although inter-State commerce may incidentally or indirectly be involved." (*Simpson* v. *Shepard, supra,* on page 402.) It is unnecessary for us to refer to or discuss the various de-

cisions touching this question. Many of them are referred to and considered and these general doctrines discussed at length in the case from which we have just quoted. The question in the case before us is not whether the deceased was engaged in inter-State commerce at the time of the accident, for that is conceded. Neither is it necessarily the question whether the Workmen's Compensation act affected directly and substantially an instrument of commerce. The argument of counsel for plaintiff in error that the Workmen's Compensation act affects the employee "solely as a member of society and not as an instrument of society," and is therefore within the police power of the State, can not be sustained if Congress has by legislation acted on the "subject matter" or the "particular subject" or in the "same field" (as those terms are understood in the decisions) as that covered by the Illinois Workmen's Compensation act. Counsel in their briefs state that the particular question here presented has never been considered or decided by any court, either State or Federal. We have been unable to find any decision of a court of final review where such question has been under consideration. But see as bearing on this question in *nisi prius* and intermediate courts of review the following: *Rounsaville* v. *Central Railroad Co. of New Jersey,* 37 N. J. L. J. 295; *Smith* v. *Industrial Accident Commission of California,* 147 Pac. Rep. 600; *Winfield* v. *New York Central and Hudson River Railroad Co.* 153 N. Y. Supp. 499. We have therefore deemed it proper to discuss at some length the authorities that bear, directly or indirectly, on the point to be decided.

. In considering the question whether Congress has acted upon the same matter as that covered by a State statute the Federal courts have used different terms in different decisions. In *Smith* v. *Alabama,* 124 U. S. 465, the words "subject matter" or "subject contained" in the State statute were employed.

In *Nashville, etc. Railway Co.* v. *Alabama,* 128 U. S. 96, the court said (p. 101): "It is conceded that the power of Congress to regulate inter-State commerce is plenary; that as an incident to it Congress may legislate as to the qualifications, duties and liabilities of the employees and others on railway trains in that commerce, and that such legislation will supersede any State action on the subject."

In *Leisy* v. *Hardin,* 135 U. S. 100, in considering this question the court used the term "particular subjects."

In *Gulf, Colorado and Santa Fe Railway Co.* v. *Hefley,* 158 U. S. 98, the opinion states (p. 102): "Clearly the State and national acts relate to the same subject matter and prescribe different rules. * * * In such case one must yield, and that one is the State law."

In *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Solan,* 169 U. S. 133, the court, in discussing the validity of State regulations as to the liabilities of State carriers of passengers, said (p. 137): "They are not in themselves regulations of inter-State commerce, although they control, in some degree, the contract and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject they are rather to be regarded as legislation in aid of such commerce and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits." This definition or rule as laid down in this last case was quoted with approval in *Adams Express Co.* v. *Croninger,* 226 U. S. 491.

In *Missouri, Kansas and Texas Railway Co.* v. *Haber,* 169 U. S. 613, in considering the Federal statutes bearing on the inter-State shipment of cattle and comparing those statutes with statutes of Kansas with reference to bringing into that State cattle liable to communicate certain diseases, the court said (p. 627): "Although the power of Congress to regulate commerce among the States and the

power of the States to regulate their purely domestic affairs are distinct powers, which in their application may at times bear upon the same subject, no collision that would disturb the harmony of the national and State governments or produce any conflict between the two governments in the exercise of their respective powers need occur, unless the national government, acting within the limits of its constitutional authority, takes under its immediate control and exclusive supervision the entire subject to which the State legislation may refer." And it was there held that the Federal and State statutes were not in conflict.

Somewhat similar statutes were under consideration in *Reid* v. *Colorado,* 187 U. S. 137. The opinion states (p. 146) : "When the entire subject of the transportation of live stock from one State to another is taken under direct national supervision and a system devised by which diseased stock may be excluded from inter-State commerce, all local or State regulations in respect of such matters and covering the same ground will cease to have any force, whether formally abrogated or not, and such rules and regulations as Congress may lawfully prescribe or authorize will alone control. [Citing authorities.] The power which the States might thus exercise may in this way be suspended until national control is abandoned and the subject be thereby left under the police power of the States. But the difficulty with the defendant's case is that Congress has not by any statute covered the whole subject of the transportation of live stock among the several States, and, except in certain particulars not involving the present issue, has left a wide field for the exercise by the States of their power, by appropriate regulations, to protect their domestic animals against contagious, infectious and communicable diseases."

In *Northern Pacific Railway Co.* v. *Washington,* 222 U. S. 370, the court quoted with approval the statement in the opinion of a State court that if Congress has legis-

lated "its act supersedes any and all State legislation on that particular subject," and further stated that the power of the State court to act only existed from the silence of Congress on the subject, and continued (p. 378): "This being the conceded premise upon which, alone, the State law could have been made applicable, it results that as the enactment by Congress of the law in question was an assertion of its power, by the fact, alone, of such manifestation that subject was at once removed from the sphere of the operation of the authority of the State." In this case it was held that congressional legislation as to hours of service so completely covered the field as to prevent State legislation on that subject.

In *Southern Railroad Co.* v. *Reid,* 222 U. S. 424, the court, in discussing the power of the States to make rates, said with reference to a State statute (p. 437): "Does it, as contended by the plaintiff in error, take control of the subject matter and impose affirmative duties upon the carrier which the State cannot even supplement? In other words, has Congress taken possession of the field?"

In *Savage* v. *Jones,* 225 U. S. 501, Federal and State statutes with reference to the sale and shipment of food for domestic animals were considered. It is stated in the opinion (p. 533): "When the question is whether a Federal act overrides a State law, the entire scheme of the statute must, of course, be considered, and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished, if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect, the State law must yield to the regulation of Congress within the sphere of its delegated power. [Citing authorities.] But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its

regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the State."

In *Hampton* v. *St. Louis, Iron Mountain and Southern Railway Co.* 227 U. S. 456, it was held that an Arkansas statute imposing a penalty for failure to deliver cars had been superseded by the provisions of the Federal act, although the provisions of the two acts were not identical.

In *Erie Railroad Co.* v. *New York,* 233 U. S. 671, the court, in discussing the power of the State and nation to regulate the hours of employment of railroad employees, said that where there is a conflict the State legislation must give way; that when Congress acts in such a way as to manifest its purpose to exercise its authority the regulating power of the State ceases to exist; and it was there held that the two acts were in conflict and that one did not merely supplement the other, the opinion saying (p. 683): "It is not that there may be division of the field of regulation, but an exclusive occupation of it when Congress manifests a purpose to enter it."

In *Atlantic Coast Line Railroad Co.* v. *Georgia,* 234 U. S. 280, the court sustained a State statute requiring locomotives engaged in inter-State commerce to be equipped with electric headlights of a certain candle power, as a police regulation. After discussing the authorities, including many that we have already cited in this opinion, and also considering the various acts of Congress bearing on the subject, the opinion says (p. 293): "It is manifest that none of these acts provides regulations for locomotive headlights. * * * The most that can be said is that inquiries have been made but that Congress has not yet decided to establish regulations, either directly or through its subordinate body, as to the appliance in question. The intent to supersede the exercise of the State's police power

with respect to this subject cannot be inferred from the restricted action which thus far has been taken."

In *Southern Railway Co*. v. *Railroad Commission of Indiana*, 236 U. S. 439, the court had under consideration an Indiana statute requiring railway companies to place secure grab-irons and hand-holds on the ends and sides of cars engaged in inter-State commerce, and it was held that until Congress had entered that field the State could legislate as to the equipment of cars in such a manner as would only incidentally affect, without burdening, inter-State commerce, but also held that Congress had entered upon that field and therefore superseded existing State legislation on the same subject, saying (p. 446): "Under the constitution the nature of that power is such that when exercised it is exclusive, and, *ipso facto,* supersedes existing State legislation on the same subject. Congress, of course, could have circumscribed its regulations so as to occupy a limited field. (*Savage* v. *Jones*, 225 U. S. 501, 533; *Atlantic Line* v. *Georgia*, 234 id. 280, 293.) But so far as it did legislate, the exclusive effect of the Safety Appliance act did not relate merely to details of the statute and the penalties it imposed; but extended to the whole subject of equipping cars with appliances intended for the protection of employees. The States thereafter could not legislate so as to require greater or less or different equipment, nor could they punish by imposing greater or less or different penalties, for, as said in *Prigg* v. *Commonwealth of Pennsylvania*, 16 Pet. 539, 617: 'If Congress have a constitutional power to regulate a particular subject and they do actually regulate it in a given manner and in a certain form, it cannot be that the State legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations and what they may deem auxiliary provisions for the same purpose. In such a case the legislation of Congress, in what it does prescribe, mani-

festly indicates that it does not intend that there shall be any further legislation to act upon the subject matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it. * * * The will of Congress upon the whole subject is as clearly established by what it had not declared as by what it has expressed.' Without, therefore, discussing the many cases sustaining the right of the States to legislate on subjects which while not burdening may yet incidentally affect inter-State commerce, it is sufficient here to say that Congress has so far occupied the field of legislation relating to the equipment of freight cars with safety appliances as to supersede existing and prevent further legislation on that subject."

What is the "subject," "particular subject," "subject matter," "field," "particular field" or "chosen field" covered by the Federal Employers' Liability act? That act was originally passed in 1908, having since been amended in some particulars on points not at issue in this case. The title and the principal sections that must be considered read as follows:

"An act relating to the liability of common carriers by railroad to their employees in certain cases.

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled:* That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such em-

ployee, and if none, then of such employee's parents, and
if none, then of the next of kin dependent upon such em-
ployee, for such injury or death resulting, in whole or in
part, from the negligence of any of the officers, agents or
employees of such carrier, or by reason of any defect or
insufficiency, due to its negligence, in its cars, engines, ap-
pliances, machinery, track, road-bed, works, boats, wharves
or other equipment.

"Sec. 3. That in all actions hereafter brought against
any such common carrier by railroad under or by virtue
of any of the provisions of this act to recover damages for
personal injuries to an employee, or where such injuries
have resulted in his death, the fact that the employee may
have been guilty of contributory negligence shall not bar
a recovery, but the damages shall be diminished by the
jury in proportion to the amount of negligence attributable
to such employee: *Provided,* that no such employee who
may be injured or killed shall be held to have been guilty
of contributory negligence in any case where the viola-
tion of such common carrier of any statute enacted for the
safety of employees contributed to the injury or death of
such employee.

"Sec. 4. That in any action brought against any com-
mon carrier under or by virtue of any of the provisions of
this act to recover damages for injuries to or the death
of any of its employees, such employee shall not be held
to have assumed the risks of his employment in any case
where the violation by such common carrier of any statute
enacted for the safety of employees contributed to the in-
jury or death of such employee.

"Sec. 5. That any contract, rule, regulation or device
whatsoever, the purpose or intent of which shall be to
enable any common carrier to exempt itself from any lia-
bility created by this act, shall to that extent be void: *Pro-
vided,* that in any action brought against any such com-
mon carrier under or by virtue of any of the provisions

of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee, or the person entitled thereto, on account of the injury or death for which said action was brought."

A former act of Congress had been declared unconstitutional in *Employers' Liability cases,* 207 U. S. 463, because that act attempted to regulate the relation of master and servant in intra-State as well as inter-State commerce. The precise question here before us was not touched upon in that case. It is reasonable to presume that Congress, in passing the later act which we now have under consideration, intended to cover the relation of master and servant only as to acts directly affecting inter-State commerce. The first and perhaps the leading case discussing and construing the present act is *Mondou* v. *New York, New Haven and Hartford Railroad Co:* 223 U. S. 1. . In that case the court said (p. 51) : "The present act, unlike the one condemned in *Employers' Liability cases,* 207 U. S. 463, deals only with the liability of a carrier engaged in inter-State commerce for injuries sustained by its employees while engaged in such commerce." Again, on page 54: "Prior to the present act the laws of the several States were regarded as determinative of the liability of employers engaged in inter-State commerce for injuries received by their employees while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the State in the absence of action by Congress. [Citing authorities.] The inaction of Congress, however, in nowise affected its power over the subject, [citing authorities,] and now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is."

In *Fulgham* v. *Railroad Co.* 167 Fed. Rep. 660, the court said: "It is clear that the act of April 22, 1908, *supra,* superseded and took the place of all State statutes regulating relations of employers and employees engaged in inter-State commerce by railroads. It covered not only injuries sustained by employees engaged in that commerce resulting from the negligence of the master and his servants and from defects in the designated instrumentalities in use in that commerce, but also dealt with contributory and comparative negligence and assumed risk, making, in certain cases at least, the master an insurer of the safety of the servant while in his employment in that commerce. It covers and overlaps the whole State legislation, and is therefore exclusive. All State legislation on that subject must give way before that act." To the same effect see *Dewberry* v. *Southern Railway Co.* 175 Fed. Rep. 307; *Taylor* v. *Southern Railway Co.* 178 id. 380; *Bottoms* v. *St. Louis and San Francisco Railway Co.* 179 id. 318; *Fithian* v. *St. Louis and San Francisco Railway Co.* 188 id. 842.

In *Philadelphia, Baltimore and Washington Railroad Co.* v. *Schubert,* 224 U. S. 603, in discussing the question as to whether the injured employee, in accepting benefits under a contract of membership in a railroad relief department, thereby took his case out from under the Federal Employers' Liability act, the court said (p. 613): "To subordinate the exercise of the Federal authority to the continuing operation of previous contracts would be to place, to this extent, the regulation of inter-State commerce in the hands of private individuals and to withdraw from the control of Congress so much of the field as they might choose, by prophetic discernment, to bring within the range of their agreements. The constitution requires no such limitation."

In *Missouri, Kansas and Texas Railroad Co.* v. *Wulf,* 226 U. S. 570, it was stated (p. 576): "The court was presumed to be cognizant of the enactment of the Employers' Liability act, and to know that, with respect to the re-

268 – 24

sponsibility of inter-State carriers by railroad to their employees injured in such commerce after its enactment, it had the effect of superseding State laws upon the subject."

In *Michigan Central Railroad Co.* v. *Vreeland,* 227 U. S. 59, the court, in discussing the scope of the Federal Employers' Liability act, said (p. 65): "We think the act declares two distinct and independent liabilities, resting, of course, upon the common foundation of a wrongful injury but based upon altogether different principles. * * * We may not piece out this act of Congress by resorting to the local statutes of the State of procedure or that of the injury. The act is one which relates to the liability of railroad companies engaged in inter-State commerce to their employees while engaged in such commerce. The power of Congress to deal with the subject comes from its power to regulate commerce between the States. Prior to this act Congress had not deemed it expedient to legislate upon the subject, though its power was ample. 'The subject * * * is one which falls within the police power of the State in the absence of legislation by Congress.' * * * By this act Congress has undertaken to cover *the subject* of the liability of railroad companies to their employees injured while engaged in inter-State commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the States. * * * It therefore follows that in respect of State legislation prescribing the liability of such carriers for injuries to their employees while engaged in inter-State commerce this act is paramount and exclusive, and must remain so until Congress shall again remit the subject to the reserved police power of the State. [Citing authorities.] The statutes of many of the States expressly provide for the survival of the right of action which the injured person might have prosecuted if he had survived. But unless this Federal statute which declares the liability here asserted provides that the right of action shall survive

the death of the injured employee it does not pass to his representative, notwithstanding State legislation." Practically to the same effect on the question involved in this last case is *Gulf, Colorado and Santa Fe Railway Co.* v. *McGinnis,* 228 U. S. 173.

In *St. Louis, Iron Mountain and Southern Railway Co.* v. *Hesterly,* 228 U. S. 702, the court passed on the question whether the Federal Employers' Liability act took the place of an Arkansas statute as to recovery for the death of the plaintiff's intestate. The State Supreme Court had held that the act of Congress was only supplementary and that the judgment could be upheld under the State law. The United States Supreme Court held such ruling wrong, and said (p. 704) : "Coming to the merits, it is now decided that the act of Congress supersedes State laws in the matter with which it deals. [Citing authorities.] The act deals with the liability of carriers, while engaged in commerce between the States, for defects in cars."

In *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co. supra,* the question was raised as to whether the act in which the plaintiff was engaged was inter-State commerce, and the court said (p. 150) : "Considering the terms of the statute, there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in inter-State commerce and while the employee is employed by the carrier in such commerce. * * * The true test always is, is the work in question a part of the inter-State commerce in which the carrier is engaged?" To the same effect is *Illinois Central Railroad Co.* v. *Behrens,* 233 U. S. 473.

In *St. Louis, San Francisco and Texas Railway Co.* v. *Seale, supra,* there was a question raised as to the applicability of a State statute. The opinion states on this point (p. 158) : "If the Federal statute was applicable the State statute was excluded by reason of the supremacy of the former under the national constitution. * * * The real

question, therefore, is whether the Federal statute was applicable, and this turns upon whether the injuries which caused the death of the deceased were sustained while the company was engaged, and while he was employed by it, in inter-State commerce."

In *North Carolina Railroad Co.* v. *Zachary*, 232 U. S. 248, the court said (p. 256) : "In order to bring the case within the terms of the Federal act * * * defendant must have been, at the time of the occurrence in question, engaged as a common carrier in inter-State commerce and plaintiff's intestate must have been employed by said carrier in such commerce. If these facts appeared the Federal act governed, to the exclusion of the statutes of the State." It was there held that the Federal act, and not the State law, must apply as to the measure of recovery.

In *Seaboard Air Line Railway Co.* v. *Horton*, 233 U. S. 492, there is a very exhaustive discussion of questions that are closely analogous to the one here under consideration. That case is perhaps the most nearly in point to this one of any decided by the United States Supreme Court. The State courts, both trial and supreme, had held that certain State statutes were applicable, and in a sense supplementary, to the Federal Employers' Liability act. The opinion in the case held to the contrary and among other things said (p. 501) : "It is settled that since Congress by the act of 1908 took possession of the field of the employer's liability to employees in inter-State transportation by rail, all State laws upon the subject are superseded. [Citing the *Mondou case, supra.*] The act is quoted in full in that case at page 6. By its first section a right of action is conferred, under conditions specified, for injury or death of the employee 'resulting, in whole or in part, from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves or other

equipment.' * * * But plainly, with respect to the latter as well as the former ground of liability, it was the intention of Congress to base the action upon negligence, only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. * * * To hold that under the statute the railroad company is liable for the injury or death of an employee resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words 'due to its negligence.' The plain effect of these words is to condition the liability upon negligence. * * * The instructions above quoted imposed upon the employer an absolute responsibility for the safe condition of the appliances of· the work. * * * It is not to be conceived that in enacting a general law for establishing and enforcing the responsibility of common carriers by railroad to their employees in inter-State commerce, Congress intended to permit the legislatures of the several States to determine the effect of contributory negligence and assumption of risk by enacting statutes for the safety of employees, since this would, in effect, relegate to State control two of the essential factors that determine the responsibility of the employer." The court discusses at length the difference between the doctrines of assumed risk and contributory negligence, and then continues: "Here, again, the court appears to have followed the local statute rather than the act of Congress, for [the North Carolina statute already quoted] has been held by the State Supreme Court to abolish assumption of risk as a bar to an action by a railroad employee for an injury attributable to defective appliances furnished by the employer. * * * The trial court, while recognizing that the act of Congress applied so far as its terms extended, and that by its terms the employee is not to be held to have assumed the risk in any case where the violation by the carrier of a statute enacted for the safety of employees contributed to the in-

jury, at the same time held that, since no statute had been enacted covering such an appliance as the glass water-gauge, the rights of plaintiff were such as he would have under the State law. * * * It is true that such an appliance as the water-gauge and guard-glass in question is not covered by the provisions of the Safety Appliance act or any other law passed by Congress for the safety of employees in force at the time this action arose. But the necessary result of this is, not to leave the employer responsible for the consequences of any defect in such an appliance, excluding the common law rule as to assumption of risk, but to leave the matter in this respect open to the ordinary application of the common law rule. The adoption of the opposite view would, in effect, leave the several State laws, and not the act of Congress, to control the subject matter."

In *Wabash Railroad Co.* v. *Hayes,* 234 U. S. 86, it was said (p. 89) : "Had the injury occurred in inter-State commerce, as was alleged, the Federal act undoubtedly would have been controlling and a recovery could not have been had under the common or statute law of the State. In other words, the Federal act would have been exclusive in its operation,—not merely cumulative. * * * On the other hand, if the injury occurred outside of inter-State commerce the Federal act was without application and the law of the State was controlling."

We have referred to and commented on practically every decision of the United States Supreme Court bearing upon this question. The decisions from other courts could not be controlling, and, at most, only persuasive. Counsel on the one hand argue that under the fair construction of the Federal Employers' Liability act as construed by these decisions the act covers the field of liability of common carriers by railroad for all injuries occurring in inter-State commerce, whether or not there has been negligence on the part of the employer, while counsel on

the other side contend that the act covers only liability of common carriers in inter-State commerce when there has been such negligence. It is clear that there can be no recovery under the Federal Employers' Liability act, properly construed, in the absence of negligence on the part of the employer, as that term is used in the statute and in the decisions construing the same. But if the question of negligence alone determines the applicability of the Federal law, then, before it can be held that such law is applicable, there must be a final adjudication as to whether the injury resulted from negligence. Obviously, Congress legislated on more than the subject of negligence. It legislated on that but also on the amount of recovery, and superseded all State laws on that subject, as shown by the decisions already cited. It also legislated on the subject of limitation when an action could be begun. (*St. Louis, Iron Mountain and Southern Railway Co.* v. *Hesterly, supra.*) It also legislated as to what persons could recover under the Federal act and when an action would survive the death of the injured person; (*Taylor* v. *Taylor,* 232 U. S. 363; *Michigan Central Railroad Co.* v. *Vreeland, supra;*) also on the subject of assumed risk and contributory negligence. We think it is clear, also, that section 5 of said Employers' Liability act touches upon and in a measure covers cases where there is no negligence on the part of either employee or employer, for it is well known that contracts for insurance, relief benefit or indemnity cover not only injuries caused by negligence, but all injuries caused in any way while engaged in the employment of the railroad. If the argument of counsel on this question were to be sustained it would usually be difficult, if not impracticable, to enforce liability for injuries caused while both parties were engaged in inter-State commerce on railroads. This fact lends strong support, in our judgment, to the argument that it was the intention of Congress to assume control of the entire field of liability of railroads for inju-

ries to employees occurring in inter-State commerce. The reasoning that has repeatedly controlled the action of the courts, that is, that the power of Congress to regulate inter-State commerce is not limited by the fact that intra-State transactions may have become so interwoven that the effective government of the former incidentally controls the latter, (*Simpson* v. *Shepard, supra,* and cases cited,) would also apply on this question. The questions of comparative negligence of employee and employer, assumed risk, contributory negligence, liability under indemnity or insurance contracts, under the wording of the act are so involved with that of negligence that it would seem impossible to separate the cases under the Federal Employers' Liability act solely on the line of the negligence of the employer. In this case there was no attempt to prove in the trial court whether the employer or its agents were in any way guilty of negligence. It seems to have been assumed in that court by all parties that that question was not the turning point in the case. From the evidence in this record no satisfactory finding could be made as to whether there was any negligence on the part of the employer. In the majority of the cases taken to the United States Supreme Court under the Federal Employers' Liability act the question whether there was negligence or no negligence has not been referred to or passed on in any way in that court, and in none of them, so far as we are advised, has the question of negligence been the turning point of the case.

Counsel for plaintiff in error argue that the title of the Federal Employers' Liability act, especially the phrase "certain cases," shows that Congress did not intend to cover all cases of injuries occurring on railroads while engaged in inter-State commerce. With this we do not agree. We think the phrase "in certain cases" was inserted in this title to obviate some of the defects suggested in the title of the act held unconstitutional in 207 U. S. 463,

*supra,* and that the "certain cases" was meant to limit it to those cases where the liability arose in inter-State commerce. The wording of the statute and the reasoning in these decisions lead inevitably to the conclusion that "the particular subject," "subject matter," "field" or "chosen field" taken possession of by the Federal Employers' Liability act was the employer's liability for injuries to employees in inter-State transportation by rail, and the real question, as clearly stated in distinct terms in several of the cases that we have quoted from in deciding whether the Federal statute is applicable, is whether the injury for which the suit was brought was sustained while the company and the injured employee were engaged in inter-State commerce. The Federal Employers' Liability act has taken possession of—has occupied—that field for the purpose of calling into play therein this exclusive power of the Federal government. Necessarily, all common or statute law of this State on that subject has been superseded. The field of liability as to employees injured while engaged in inter-State commerce on railroads is occupied exclusively by the Federal Employers' Liability act,—and that, too, regardless of the negligence or lack of negligence of either party to the litigation. Beyond question the Federal Employers' Liability act superseded, as to injuries of employees engaged on railroads in inter-State commerce, all statute or common law in force in the State of Illinois previous to the passage of the Workmen's Compensation act. That was the precise holding in *Wabash Railroad Co.* v. *Hayes, supra.* The legislature, in passing the Illinois Workmen's Compensation act of 1911, intended that wherever it was in force it should supersede all other State statutes and the common law as to the liability of employers for injuries to employees, for section 1 of said act provides, among other things, that any employer having elected to come within its provisions will "thereby relieve himself from any liability for the recovery of dam-

ages, except as herein provided." The United States Supreme Court takes that view of a similar compensation act in the State of Ohio in *Jeffrey Manf. Co.* v. *Blagg,* 235 U. S. 571, in which case, in referring to that State act, the court said: "It is one of the laws which has become more or less common in the States, and aims to substitute a method of compensation, by means of investigation and hearing before a board, for what was regarded as an unfair and inadequate system, based upon the statutes or the common law." The Illinois legislature, in passing the act here in question, clearly understood that certain injuries occurring in inter-State commerce should not be within the provisions of the act, for in section 2 it is provided that it should apply "in the business of carriage by land or water, * * * except as to carriers which shall be construed to be excluded herefrom by the laws of the United States relating to liability to their employees for personal injuries while engaged in inter-State commerce, where such laws are held to be exclusive of all State regulations providing compensation for accidental injuries or death suffered in the course of employment."

Counsel for plaintiff in error argue that the provision just quoted gives no greater force to the conditions therein set forth than would be given under the Federal Employers' Liability act independent of this provision in the Illinois act. Without question that is true; but this provision tends strongly to show that the State legislature did not intend to place within the provisions of the Workmen's Compensation act all injuries that occurred on railroads in Illinois, whether the injured person was engaged in intra-State or inter-State commerce. This argument of counsel would logically lead to that conclusion. With this we cannot agree.

The conclusion we have reached is supported by the reasoning in *Wagner* v. *Chicago and Alton Railroad Co.* 265 Ill. 245, *Patry* v. *Chicago and Western Indiana Rail-*

*road Co.* 265 id. 310, and *Devine* v. *Chicago, Rock Island
and Pacific Railway Co.* 266 id. 248, where this court has
had under consideration the construction of the Federal
Employers' Liability act.   The conclusion also finds sup-
port in the following cases:   *Truesdell* v. *Chesapeake and
Ohio Railway Co.* 169 S. W. Rep. (Ky.) 471; *Cincinnati,
New Orleans and Texas Pacific Railroad Co.* v. *Hill,* 170
id. 599; *Reeve* v. *Northern Pacific Railway Co.* 144 Pac.
Rep. (Wash.) 63; *Lauer* v. *Northern Pacific Railway Co.*
145 id. 606; *New York, Chicago and St. Louis Railroad
Co.* v. *Niebel,* 214 Fed. Rep. 952; *Schweig* v. *Chicago,
Milwaukee and St. Paul Railway Co.* 216 id. 750.   We
think, also, the reasoning of the courts with reference to
the Federal Bankruptcy law, and the State statutes touch-
ing on the same subject, tend to support the same conclu-
sion, as shown by the following among other authorities:
*Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saun-
ders,* 12 id. 213; *Harbaugh* v. *Costello,* 184 Ill. 110;  16
Am. & Eng. Ency. of Law, (2d ed.) 642, and cases cited.

Counsel for plaintiff in error insist that the conclusion
we have reached concerning the field covered by the Fed-
eral Liability act is inconsistent with the holdings of the
United States Supreme Court in certain decisions where
the question has been considered as to whether the Federal
and State statutes deal with the same identical subjects.
They rely very strongly upon *Sherlock* v. *Alling,* 93 U. S.
99.   We do not consider that case in any way in conflict
with the conclusions we have reached.   It has been cited
and referred to many times by the United States Supreme
Court and more than once in the cases that we have here-
tofore cited.   The principal holding of the court in that
case, as we read the opinion, is, that the action of Con-
gress as to the regulation of commerce or the liability for
its infringement is exclusive of State authority, but until
some action is taken by Congress the legislation of a State
not directed against commerce or any of its regulations

but generally to the rights and duties of citizens is legal, although it may indirectly and remotely affect the interests of foreign and inter-State commerce or persons engaged in such commerce. The late case of *Sligh* v. *Kirkwood, 237* U. S. 52, is one of the same class of cases. The case of *Atlantic Coast Line Railway Co.* v. *Georgia, supra,* where a statute of Georgia was upheld requiring locomotives engaged in inter-State commerce to be equipped with electric headlights, so far as it applies to the facts in this case, has been effectually construed by the more recent decision of the United States Supreme Court in *Southern Railway Co.* v. *Railroad Commission of Indiana, supra.* The field of legislation that was being discussed in the electric headlight case was not a liability for injury to an employee while engaged in inter-State commerce, but whether the subject of electric headlights was in the field already covered by Federal legislation as to safety appliances. The question of the Federal Employers' Liability act was not considered or touched upon in that case. In none of the decisions cited and relied on by counsel for plaintiff in error was anything said that in any way limited or modified the doctrine laid down in the decisions heretofore considered, that Congress by the Federal Employers' Liability act intended to occupy the field of employers' liability to employees for all injuries occurring on railroads while engaged in inter-State commerce. Under those decisions the conclusion is inevitable that in a suit to recover for an injury on a railroad occurring while the employer and employee were engaged in inter-State commerce, the Federal Employers' Liability act alone would control and could not be pieced out or supplemented by any State statute. The decedent having been engaged, at the time of his death, in inter-State commerce, the recovery must be had, if at all, under and subject to the provisions of the Federal Employers' Liability act.

Counsel for plaintiff in error argue that many of the injuries on railroads while engaged in inter-State commerce occur without any negligence on the part of anyone, and that therefore the conclusion here reached will leave many injured employees,—or if the injury causes death, their relatives,—without any opportunity for compensation, and is contrary to the spirit of the times, which demands humane legislation covering this subject. That argument may well be addressed to the Federal Congress. This court must confine itself to the proper construction and operation of this act and cannot consider the evils which it is claimed will arise from the execution of the Federal Employers' Liability act, however real those evils may be.

It is suggested but not argued in the briefs of counsel for plaintiff in error, that the rights and liabilities under the two acts here in question are in a sense cumulative, and that the payment of compensation under the State act would not bar an action under the Federal act, under the reasoning of the United States court in *Philadelphia, Baltimore and Washington Railroad Co.* v. *Schubert, supra,* and other like cases. Can the Workmen's Compensation act of Illinois, requiring compensation to be paid to employees by employers for injuries, be fairly included within the terms of section 5 of the Federal Employers' Liability act?

Workmen's compensation and industrial insurance laws had not been adopted in any of the States of this country in 1908, at the time the Federal Employers' Liability act went into effect. The first State act of that kind was passed in June, 1910, by the State of New York. Since then at least twenty-one other States have passed such laws. (Harper on Workmen's Compensation, p. 6.) Congress, therefore, did not have workmen's compensation acts particularly in mind when it drafted the Federal Liability law. It is true that this court has held that when parties have

elected to come under the Workmen's Compensation act of this State the provisions of that act thereby become a part of the contract of employment, (*Deibeikis* v. *Link-Belt Co.* 261 Ill. 454,) and therefore that contract might be included in the term "any contract," referred to in the first part of said section 5, but the contract referred to in that section is one that has been entered into for the purpose of enabling the common carrier "to exempt itself from liability created" by the Federal Employers' Liability act. Surely it cannot be. reasonably held that the Workmen's Compensation act is a contract entered into for that purpose. The words "insurance relief," "benefit" or "indemnity" would, none of them, in the connection in which they are used, seem to include the compensation to be paid under the Workmen's Compensation act. While that act is based upon the same general principles as workmen's benefit insurance, it would hardly be supposed that Congress, in said section 5, intended to cover such a compensation act as the one here under consideration. As already stated, the Federal Liability act, in a certain sense, in some cases at least, requires the master to be an insurer of the safety of his employee, the same as does the Workmen's Compensation act. Having in mind the history of the legislation, both Federal and State, on the questions here under consideration, we can reach no other conclusion, under the wording of said section 5, than that the Illinois Workmen's Compensation act was not intended to be included by Congress within any of the exceptions stated in said section. What has already been said heretofore in this opinion with reference to the intent of the Illinois legislature in passing the Workmen's Compensation act practically demonstrates that that body did not intend the remedy thereunder to be in any sense cumulative to the remedy provided for in the Federal Employers' Liability act. Congress could include workmen's compensation acts within the exception

provided for in said section 5 but has not yet seen fit so to do.

The judgments of the Appellate and circuit courts must be reversed and the cause remanded.

*Reversed and remanded.*