**Emma Schwake, Administratrix of the Estate of William Schwake, Deceased, Appellant, v. Chicago, Milwaukee & St. Paul Railway Company, Appellee.**

### Gen. No. 7,101.

1. MASTER AND SERVANT—*question of negligence in lighting place of work as question of law.* The trial court properly found, as a matter of law, that a railroad was not guilty of negligence in failing more adequately to light a small bridge on which plaintiff's intestate was working during the nighttime and from which he fell and received fatal injuries, where the evidence shows that he had been working on the bridge during the daylight hours and was familiar with the situation, that the bridge was small and had a guardrailing and plank walk on one side for the safety of pedestrians, that at the time of the accident a wrecking train was working at one end of the bridge and adequately lighted the entire bridge so that a witness, standing on the opposite end, could see across and see the intestate, who was not required to go on the side of the bridge which was not railed, start across that side, towards the lighted end, and, when two-thirds of the way across, swerve or lose his balance and fall from the bridge.

2. MASTER AND SERVANT—*when railroad is not negligent as a matter of law in not placing railing on bridge.* A peremptory instruction for the railroad on the question whether it was negligent in failing to have a guardrailing on the side of a small bridge from which plaintiff's intestate fell was proper where the evidence shows that such intestate had been engaged in working during the daylight hours in carrying freight and baggage from a wrecked baggage car across such bridge, that on the other side thereof was a

railing and a plank walk of adequate width for the use of workmen, that at the time of the accident the bridge was sufficiently lighted for persons to see the same clearly and that plaintiff's intestate started to cross the bridge on the side which had no railing and after passing two-thirds of the way across was seen to swerve or lose his balance and fall from the bridge, and that his duties did not require him to go on the unguarded side.

Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed October 25, 1922.

R. H. KRAMER, J. K. NEWHALL and R. S. EGAN, for appellant.

JOHN A. RUSSELL and CARL S. JEFFERSON, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

The appellee railway company has a bridge south of the City of Elgin and over a small stream known as Poplar creek. The abutments are on the east and west sides of the creek. Upon these abutments rest steel girders to which a large steel "pan" is suspended. In this pan are laid the ties and rails of the tracks. Between the rails and filling the entire pan to a flush surface is gravel and other material of like character. The bridge is forty feet long and twenty feet wide. There are three sets of tracks running across the bridge, two main tracks, one known as the eastbound and the other as the westbound. The third set is known as the industrial track and is used in connection with certain factories located in the vicinity of the bridge. The bridge extends across the creek from the east in a northwesterly direction. There is a plank walk on the north side of the bridge and immediately north of the walk is a railing on the bridge. Between the eastbound track and the westbound track there is another plank walk. On the south side of the

eastbound track the surface of the bridge is level with gravel as heretofore mentioned but there is no walk thereon. Neither is there any guardrail on the south side of the bridge.

On the night of September 4, 1920, the engine, tender and baggage car of a local train running between Chicago and Elgin became derailed and tipped over near the east end of said bridge. Their position so obstructed the bridge as to prevent trains from crossing it. The wreck occurred early in the afternoon of said day. Appellant's intestate was a section hand and with other section men was brought to the scene of the accident where he was engaged in carrying baggage, ice cream and other articles from the overturned baggage car across the bridge where they were loaded on to another train and taken into Elgin. About eight o'clock on the night of said day while the said intestate was walking from the west end of the bridge toward the east end he fell from the south side thereof into the creek striking his head upon a large rock which was there. He thereby received injuries from which he died the next day.

The declaration by its several counts avers that the railway company and the said intestate were at and before the time of the accident engaged in interstate commerce; that the company was negligent in not providing a guardrail along the south side of said bridge, and in not furnishing the said intestate a reasonably safe place to work, in that the bridge was not sufficiently lighted at the time of the accident. A plea of the general issue was filed and a trial was had by a jury. At the conclusion of all of the evidence offered on behalf of the plaintiff, the court peremptorily instructed the jury to find the defendant not guilty. Judgment was rendered in favor of the defendant in bar of the action and this appeal is from that judgment.

The evidence shows that plaintiff's intestate,

Schwake, began work carrying baggage about three o'clock in the afternoon. It does not appear from the evidence how long he was so engaged. Neither does it appear that at the time of the accident he was employed in transferring any baggage nor that he was engaged in cleaning up the wreck or putting the bridge in proper repair for use. A "wrecker" with its crew had been brought from the east sometime between seven and eight o'clock in the evening. The members of the wrecking crew were engaged in righting the overturned engine and cars, but it does not appear that they were assisted either by the intestate or any other section man. There was on the bridge quite a number of people, attracted to the wreck by curiosity. The "wrecker" was equipped with what is known as a "cluster" of electric lights, for the purpose of furnishing light in the nighttime to members of the wrecking crew while they are at work. The evidence shows that on the night in question these lights were burning and that the wrecker was about fifteen feet east of the wreck. It also shows that some of the members of the wrecking crew were supplied with burning torches and that the trainmen were about the bridge with lighted lanterns. People were continuously passing from one side of the bridge to the other.

John Sharp testified that he was standing near the west end of the bridge and that while there a man passed him, brushing his arm. The man proceeded over the bridge towards the east; that where he was standing it was dark and he was unable to distinguish who the man was because of the darkness. The man was between the rails of the track on the south side of the bridge; that when he had gotten about two-thirds of the way across, he varied a little, and then seemed to "weave" and fell off of the bridge. No other witness testified to having seen the intestate as he was endeavoring to cross the bridge at this time.

This suit was brought under the Federal Employ-

er's Liability Act. Under such act the burden is on the plaintiff to prove the negligence charged in the declaration. (*Staley v. Illinois Cent. R. Co.*, 268 Ill. 356; *New Orleans & N. E. R. Co. v. Harris*, 247 U. S. 367.) While the question of negligence is generally one of fact which should be submitted to the jury for determination, nevertheless, if the facts are undisputed and if they irresistibly lead to a conclusion which all reasonable minds would reach, then the question becomes one of law to be decided by the court. In this case it is apparent from the evidence that plaintiff's intestate had been about the bridge for a number of hours during the daytime; that the bridge was small, its entire length was less than the width of an ordinary street; that at the time of the accident while it was somewhat dark at the west end of the bridge, there was sufficient artificial light at the east end for those engaged at the work in straightening up the engine and cars to see how to perform their work; that it was light enough for the witness, Sharp, while standing at the west end of the bridge to observe the course of the intestate across the bridge to the place he fell. The evidence when construed most favorably in behalf of the plaintiff does not even tend to support the charge that the accident·in question was attributable in any degree to a lack of light.

There can be no doubt that if there had been a railing on the south side of the bridge the intestate would not have fallen off of the bridge. What made him "weave" or swerve from his course is impossible for us to say. Neither is it necessary for us to inquire why he did not choose to take his course over the plank walk. Contributory negligence is no defense in an action of this kind. And under our view of the case, it is not necessary for us to decide whether said intestate assumed the risk attendant upon his attempt to cross the bridge in the way he did. The real ques-

tion in this case is whether or not there is any evidence fairly tending to support the charges of negligence made in the declaration. The bridge was provided with plank walks. The surface of the bridge was level. It was sufficiently lighted so that those who had occasion to be thereon could see their way in walking across. The evidence does not disclose that there was any necessity or reason for anyone engaged in transferring baggage from one side of the bridge to the other to be on the south side of said bridge. The railway company would not reasonably apprehend that the intestate would be near the south side of the bridge in the performance of his duties. Consequently the railway company owed the intestate no duty to construct and maintain a guard or railing on that side of the bridge. The existence of a duty on the part of the defendant to the plaintiff's intestate is the first essential element of negligence. Without this element there can be no negligence. (*Chicago & W. I. R. Co. v. Gardanier,* 116 Ill. App. 619; *Cleveland, C., C. & St. L. Ry. Co. v. Cline,* 111 Ill. App. 416; 29 Cyc. 419.)

Viewing all the evidence in this case in a light most favorable to the plaintiff, we are constrained to hold that such evidence, together with all the inferences which can reasonably and fairly be drawn therefrom, fails to establish that the injury to plaintiff's intestate was caused by any negligence charged against the appellee railway company.

Since we find that appellee is not guilty of negligence as charged against it, it is unnecessary for us to discuss any other of the questions which are raised in the respective briefs of counsel.

The judgment of the trial court is affirmed.

*Judgment affirmed.*