Grace L. Miller, Administratrix of the Estate of Claude E. Miller, Deceased and Grace L. Miller, Appellants, v. Margaret Miller, Appellee.

Gen. No. 8,367.

288

Opinion
filed April 22, 1930.

WILLIAMSON & WINKLEMANN and COSTIGAN & WOLLRAB, for appellants.

WILBER H. HICKMAN, for appellee; C. H. SWICK and F. T. CARSON, of counsel.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

On December 14, 1926, Claude E. Miller, while employed as brakeman for the P. & E. R. R. Co. and the C. C. & St. L. R. R. Co., was killed in the discharge of his duties while engaged in interstate commerce. His widow, Grace L. Miller, was appointed administratrix of his estate by the county court of Champaign county and brought suit in the circuit court of Cook county against said railroad companies under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 et seq. A settlement of the case was consummated by the payment to her as such administratrix of the sum of $6,000. By leave of the county court she paid her attorney 25 per cent of this amount as attorney's fees, leaving a net sum of $4,500 to be distributed to those entitled thereto under said act. The deceased left his widow, Grace L. Miller, and one daughter by a former wife, the appellee, Margaret Miller, though it appears from the record that her correct name is Lida Mar-

garet Miller. The mother of appellee procured a divorce from the deceased November 12, 1914, at which time appellee was 5 years old. In 1916 appellee and her mother moved to the State of Ohio where they have since resided. At the time of the death of her father appellee was 18 years and 6 months old. On April 12, 1916, a supplemental decree was entered in the divorce proceedings whereby the deceased was ordered to pay to his first wife for the support of their daughter, appellee, $12 on April 1, 1916, and $12 on the first day of each and every month thereafter until further order of the court. At the time of the death of the deceased he was earning about $165 per month. On February 25, 1924, he paid $20 for the support of appellee under the decretal order entered in the divorce case, also $60 on April 30, 1924, and $60 about 6 months before his death. The appraisement bill filed in the estate shows that the same consisted of household goods of the value of about $81 and back pay from the railroad companies of $68. He left, however, life insurance of which appellee received $1,000 and appellant $1,800. Appellee's birthday is May 31 and she became 18 years of age about 6½ months prior to her father's death. Appellant, his widow, had no financial means of any kind and depended entirely upon his earnings as brakeman. After the death of the deceased, his former wife was appointed guardian of appellee in order to collect the insurance due her daughter. At the time this cause was tried appellee was earning $97 a month and had received this amount for two months prior thereto and had received $90 a month for five months previous to that time. She was a high school graduate and had spent one year in college. She started to work as a stenographer at the rate of $12 per week and was earning this amount at the time of her father's death. Her salary had gradually increased until it had reached the sum of $97 per month.

Appellant contends that under the provisions of the Federal Employers' Liability Act she is entitled to the whole net amount of the settlement, while appellee, under cross errors assigned by her, contends that the distribution of the proceeds of settlement should be made in accordance with the laws of descent of this State. The county court ordered that the sum of $2,625 be paid to appellant and $1,875 be paid to appellee. On appeal to the circuit court that court ordered that $3,000 of the amount be paid to appellant and $1,500 to appellee. Section 1, Cahill's St. ch. 64, ¶ 1, provides that males of the age of 21 and females of the age of 18 shall be considered of full age for all purposes; and until these ages are attained, they shall be considered minors. It is urged by appellant that appellee having attained the age of 18 years and being self-supporting at the time of her father's death she was not entitled to share in the damages recovered by virtue of said act. It is insisted by appellee that under the laws of Ohio a female does not become of age until she has reached 21 years and therefore she was still a minor child at the time of her father's death, on the assumption that the law of Ohio where she resided should prevail. No laws of the State of Ohio were offered in evidence on this question but in lieu thereof a letter from the Attorney General of that State was admitted subject to objection in which he stated that under the laws of Ohio 21 years was the legal age of a female person. This letter was incompetent and there being no competent evidence as to what the laws of Ohio are or were at the time of the death of the deceased it will be presumed that the common law prevails in that State. Under the common law the full age of either male or female is 21 years (2 C. J. 402, also note 17 [d]). However, neither the law of Illinois nor that of Ohio is controlling upon this question as it is governed by the law of the United States. Our research has failed to find any federal statute defining

the terms, "legal age," "lawful age" or "full age," these terms being used synonymously in different jurisdictions. Therefore we conclude that the common law prevails in situations arising under the federal laws, and, considering the questions arising on this appeal, appellee must be considered to have been a minor at the time of her father's death. *Southern Ry. Co. v. Gray,* 241 U. S. 333; *New Orleans & N. R. Co. v. Harris,* 247 U. S. 367.

When congress assumed to take jurisdiction of the question of damages arising out of injuries received by employees engaged in interstate commerce, it took complete and exclusive jurisdiction of the subject matter. Congress may permit the different States to exercise jurisdiction over matters in which jurisdiction is inherent in the federal government, but when it assumes to act and take unto itself such jurisdiction all State laws in regard to such subject matter are abrogated and set aside. Until 1908 congress had not assumed any jurisdiction over the subject of master and servant in so far as it involved damages received by the servant while engaged in interstate commerce, and the different States were free to apply their respective laws in such cases, but since that time State laws no longer have any force or effect in regard to the subject matter embraced in said act. While the act gives concurrent jurisdiction to State and federal courts for the trial of causes of action arising thereunder, yet the State courts are bound to follow the construction thereof in accordance with that laid down by the Supreme Court of the United States. The Supreme Court of Illinois early recognized the principles hereinabove announced in the case of *Staley v. Illinois Cent. R. Co.,* 268 Ill. 356. The plaintiff in error in that case sought to procure compensation for the death of her husband under the Workmen's Compensation Act of this State, Cahill's St. ch. 48, ¶ 201 *et seq.,* he having

been killed by one of the switch engines of defendant in error while engaged in interstate commerce. The court held: "The Federal Employers' Liability act has taken possession of—has occupied—that field for the purpose of calling into play therein this exclusive power of the Federal government. Necessarily, all common or statute law of this State on that subject has been superseded. The field of liability as to employees injured while engaged in inter-State commerce on railroads is occupied exclusively by the Federal Employers' Liability act,—and that, too, regardless of the negligence or lack of negligence of either party to the litigation. Beyond question the Federal Employers' Liability act superseded, as to injuries of employees engaged on railroads in inter-State commerce, all statute or common law in force in the State of Illinois previous to the passage of the Workmen's Compensation act." The principles announced in the *Staley* case, *supra,* have been confirmed and approved by the Supreme Court of the United States in many cases and particularly in the case of *New York Cent. R. R. v. Winfield,* 244 U. S. 147, wherein it is stated: "The State decisions upon the point are conflicting. The New York court in the present case and the New Jersey court in *Winfield v. Erie R. Co.,* 88 N. J. L. 619, hold that the act relates only to injuries resulting from negligence, while the California court in *Smith v. Industrial Accident Commission,* 26 Cal. App. 560, and the Illinois court in *Staley v. Illinois Cent. R. Co.,* 268 Ill. 356, hold that it has a broader scope and makes negligence a test,—not of the applicability of the act, but of the carrier's duty or obligation to respond pecuniarily for the injury. In our opinion the latter view is right and the other wrong."

Section 1 of the act, Cahill's St. ch. 114, ¶ 321, is as follows: "That every common carrier by railroad while engaging in commerce between any of the sev-

eral States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents, and if none, then of the next of kin dependent upon such employee, for such injury or death resulting, in whole or in part, from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

In the case of *Michigan Cent. R. Co. v. Vreeland*, 227 U. S. 59, it is held: ''Prior to this act Congress had not deemed it expedient to legislate upon the subject, though its power was ample. . . . By this act Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the States.'' And again: ''It therefore follows that in respect of State legislation prescribing the liability of such carriers for injuries to their employees while engaged in interstate commerce, this act is paramount and exclusive, and must remain so until Congress shall again remit the subject to the reserved police power of the States.'' In regard to the rights of those who might benefit under the statute the court further held in this case: ''It is a liability for the loss and damage sustained by relatives dependent upon the decedent.

It is therefore a liability for the pecuniary damage resulting to them, and for that only."

In the case of *American Railroad Company of Porto Rico v. Didricksen,* 227 U. S. 145, the court held: "The cause of action which was created in behalf of the injured employee did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained. The court below went beyond this limitation by charging the jury that they might, in estimating the damages 'take into consideration the fact that they are the father and mother of the deceased and the fact that they are deprived of his society and any care and consideration he might take of them, or have for them during his life.' The loss of the society or companionship of a son is a deprivation not to be measured by any money standard. It is not a pecuniary loss under such a statute as this. Laying out of consideration the indefiniteness of the term 'care and consideration,' as elements in addition to the loss and damage of such pecuniary assistance as the parents of the decedent might have reasonably anticipated from their son, it is enough for the purpose of this case to say that there was no allegation of any such loss, nor any evidence relating to the subject, or from which its pecuniary value might have been estimated." It might be suggested that, as the above case was brought by the father and mother of the deceased, the rule therein announced that the damages must be limited strictly to such financial loss as results from a reasonable expectation of pecuniary

benefits by the wrongful death of the employee has no application in a suit brought by the widow and the children of the deceased, but in the case of *Gulf, C. & S. F. Ry. Co. v. McGinnis,* 228 U. S. 173, the same rule is applied in a suit by the widow and her children for such damages and the *Didricksen* case, *supra,* is cited as an authority therefor. In the *McGinnis* case it appeared that one of the children was a married woman residing with and maintained by her husband, and the Court of Civil Appeals of the State of Texas held: ''The Federal statute expressly authorized the suit to be brought by the personal representative for the benefit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance from him.'' The Supreme Court of the United States, however, held the above construction to be erroneous and said: ''This construction of the character of the statutory liability imposed by the act of Congress was erroneous. In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some pecuniary loss. . . . The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. . . . This will, of course, exclude any recovery in behalf of such as show no pecuniary loss.''

In the cases of *St. Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156 and *Taylor v. Taylor,* 232 U. S. 363, it is held that the Federal Employers' Liability Act of 1908, as amended in 1910, supersedes all State statutes upon the subject covered by it, and the distribution of the amount recovered in an action for death of an employee is determined by the provisions of the act and not by the State law. In the case of *Garrett v. Louisville & N. R. Co.,* 235 U. S. 308, the question of the sufficiency of the declaration was involved. The court in this case held: "It is now definitely settled that the act declared two distinct and independent liabilities resting upon the common foundation of a wrongful injury: (1) liability to the injured employee for which he alone can recover; and (2), in case of death, liability to his personal representative 'for the benefit of the surviving widow or husband and children,' and if none, then of the parents, which extends only to the pecuniary loss and damage resulting to them by reason of the death. . . . The plaintiff's declaration contains no positive averment of pecuniary loss to the parents for whose benefit the suit was instituted. Nor does it set out facts or circumstances adequate to apprise the defendant with reasonable particularity that such loss in fact was suffered. Common experience teaches that financial damage to a parent by no means follows as a necessary consequence upon the death of an adult son." The case of *Norfolk & Western Ry. Co. v. Holbrook,* 235 U. S. 625, holds: "Under the employers' liability act, where death is instantaneous, the beneficiaries can recover their pecuniary loss and nothing more; but the relationship between them and the deceased is a proper circumstance for consideration in computing the same. The elements which make up the total damage resulting to a minor child from a parent's death may be materially different from those de-

manding examination where the beneficiary is a spouse or collateral dependent relative; but in every instance the award must be based upon money values, the amount of which can be ascertained only upon a view of the peculiar facts presented.'' In the case of *Devine v. Chicago, R. I. & P. R. Co.*, 266 Ill. 248, a verdict was returned in favor of the plaintiff in the sum of $15,000 in a suit brought under the Federal Employers' Liability Act. It was assigned as error that the amount of the verdict should not have been to exceed $10,000, the limit provided by the statutes of Illinois. The Supreme Court held that the cause of action was entirely controlled by the federal act and as that act placed no restriction on the amount of damages no limitation could be applied thereto. This case was affirmed by the Supreme Court of the United States, 239 U. S. 52. The liabilities of interstate railroad carriers to make compensation for personal injuries suffered by their employees while engaged in interstate commerce are regulated both inclusively and exclusively by the federal act, and no room exists for State regulation. *New York Cent. R. Co. v. Winfield*, 244 U. S. 147; *Erie R. Co. v. Winfield*, 244 U. S. 170.

Damages under the Federal Employers' Liability Act should be equivalent to the loss sustained by the beneficiaries resulting from the deprivation of the reasonable expectation of pecuniary benefits which would have resulted from the continued life of the deceased employee and the question of the proper measure of damages is inseparably connected with the right of action and must be settled according to general principles of law as administered in the federal courts. *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U. S. 485.

During the period the Federal Employers' Liability Act was undergoing construction by the Supreme Court of the United States a number of the State courts gave various constructions thereto and ren-

dered decisions which were found to be at variance
with the views later expressed by the Supreme Court
of the United States. Some of these have been cited by
appellee but such decisions can have no influence in de-
termining the proper construction of the act where
they are opposed to that expressed by the latter court.
In our opinion it is clearly established: (1) that the
jurisdiction of the federal government over injuries re-
ceived by employees of interstate carriers while en-
gaged in interstate commerce is exclusive and inclu-
sive and State laws have no application to such cases;
(2) in case of the death of such employee the bene-
ficiaries shall, in the first instance, be the surviving
widow and children, but to entitle such widow or child
to damages, the proofs must show that such widow or
child had a reasonable expectation of pecuniary bene-
fit which would have resulted from the continued life
of the deceased employee; (3) the measure of damages
is a substantive part of the act and is not controlled
by State laws of descent, distribution, or otherwise.

It is unnecessary to discuss the amount of damages
allowable to the widow as the evidence shows that she
would be entitled to an amount equal to or in excess of
the whole amount of the settlement if there had been
no surviving child. In order to entitle appellee to
share in this fund, the evidence must show that she
had a reasonable expectation of receiving pecuniary
benefits from the deceased had he lived, which benefits
must be measured by a money standard. That the de-
ceased intended to contribute money to some extent to
the support of appellee cannot be doubted. He had
made several payments for her benefit before his
death, the last one about 6 months prior thereto. That
he had in mind his paternal relations to appellee is
also shown by the fact that he had provided life insur-
ance payable to her at his death. The evidence fairly
tends to show that he intended to help appellee finan-

cially during her minority as much as his limited means would permit. However, in our opinion, from the facts in this case, the most that appellee could have reasonably expected as financial benefits from her father had he lived would have been the sum of $12 per month from the time of his death until she reached the legal age of 21 years, which would cover a period of 2 years and 6 months. This would be the extreme limit of any financial benefit she could have reasonably expected. While the deceased was in arrears on his payments of alimony there could be no reasonable expectation that he ever would or could have paid all the money decreed if he had lived and such financial benefits are not based upon legal obligations alone. *Michigan Cent. R. Co. v. Vreeland, supra.*

The apportionment of damages between beneficiaries in cases arising under the Federal Employers' Liability Act must necessarily depend upon the facts developed in each particular case and in case at bar we can find no justification in the evidence for the amount meted to appellee, which, in our opinion is excessive.

The judgment of the circuit court is reversed and cause remanded with directions to apportion the damages between appellant and appellee in accordance with the views herein expressed.

*Reversed and remanded with directions.*