In the Matter of the Estate of ANTON URAVIC, Deceased.

Surrogate's Court, Kings County, February 24, 1932.

*Conrad Saxe Keyes,* special guardian.

*Paul C. Matthews,* for the petitioner.

WINGATE, S.   The institution of this proceeding for the judicial settlement of the accounts of the administratrix marks the rising of the curtain on the final act of a legal drama which is of more than passing historical interest.

Anton Uravic was a stevedore in the employ of Jarka Co., Inc., a domestic corporation.   On July 13, 1926, he was engaged in unloading a German vessel in New York harbor and received injuries in consequence of the negligence of a fellow-servant from which he died on the same day.   Limited letters of administration were granted by this court to the widow on October 28, 1926, for the purpose of enabling her to litigate her claims for a recovery by reason of his death.

This action for damages was tried in the Supreme Court of Kings county on March 30, 1927, and resulted in a dismissal of the com-

plaint.  The attorneys for the administratrix then informed her that they did not care to continue the case, as they deemed the chances of obtaining a reversal extremely remote.  Another attorney was employed, but almost simultaneously with his engagement, the Court of Appeals rendered its decision in *Resigno* v. *Jarka Co., Inc.* (248 N. Y. 225), which involved a legally identical state of facts, and in effect determined that a longshoreman, employed as the intestate was, by an American employer on a foreign vessel in American waters, could not invoke the benefits of the Jones Act (U. S. Code, tit. 46, § 688) in a suit against the employer.

The result of this determination by the unanimous judgment of the court in two extended and carefully considered opinions by Chief Judge CARDOZO and Judge CRANE, covering sixteen printed pages in the official reports, was to render it certain that no different result could be anticipated short of the United States Supreme Court.  The newly-retained attorney thereupon promptly retired from the case.

The administratrix had the good fortune, however, to interest Paul C. Matthews in undertaking the prosecution of her claim.  As might be supposed in the case of a person in her situation, she was utterly without the means to finance so involved a litigation, and Mr. Matthews undertook the task on a contingency agreement of fifty per cent.

The result of his efforts is legal history.  The dismissal of the complaint at Trial Term was unanimously affirmed in the Appellate Division (225 App. Div. 892) and in the Court of Appeals (252 N. Y. 530) but was unanimously reversed by the United States Supreme Court (282 U. S. 234), Mr. Justice HOLMES writing for the court, and the case was remitted for trial.  On the eve of the retrial, when all had been made ready, defendant settled for $15,000.  The distribution of this fund is the subject-matter of the present proceeding.

Approval is asked of the fifty per cent contingency payment to Mr. Matthews.  Under ordinary circumstances an agreement for such a large share in a recovery is viewed by this court with extreme suspicion.  The circumstances here present are, however, far from ordinary, and the court not only grants such approval but feels that the action of this attorney in thus championing an apparently hopeless cause is worthy of the highest commendation.  All parties are agreed on this disposition of this feature of the case.

The parties are also agreed that the distributable portion of the recovery is to be allocated among the next of kin of decedent in the proportions indicated by section 133 of the Decedent Estate Law of the State of New York (as added by Laws of 1920, chap.

919). To such thesis, however, the court is unable to adhere. In *Matter of De Martino* (142 Misc. 431) this court had occasion to consider a similar question and reached the conclusion that since the recovery in such a case is had by reason of the provisions of the Federal statute, the distribution of the resulting avails is likewise governed by that statute as interpreted by the United States Supreme Court in *Gulf, Colorado & Santa Fe Ry. Co.* v. *McGinnis*, (228 U. S. 173, 175, 176).

While some authority was there cited for the result then reached, the opinion of the court was directed more especially to theory and pure logic, owing to the fact that no directly controlling decisions of this State had been found on the subject.

The parties to this proceeding, however, challenge this result on authority, and it, therefore, becomes a matter of interest to examine the state of the decided cases on the subject.

The only adjudication cited for a different determination is *Matter of Stone* (173 N. C. 208), decided by the Supreme Court of North Carolina on March 28, 1917. The authority of that determination is apparently increased by the notation of present counsel that a writ of error in respect to that decision was dismissed by the United States Supreme Court in 245 United States, 638. A reference to the latter serves, however, to dispel the appearance of any controlling weight, since the *per curiam* opinion reads: " Dismissed for want of jurisdiction upon the authority of § 237, Judicial Code," and several cases cited. It is obvious, therefore, that the case was not decided by the United States Supreme Court on the merits, wherefore, the only authority of the adjudication is that of the Supreme Court of North Carolina itself.

In that case a sum in settlement was paid to the administratrix of a decedent who was engaged in interstate commerce at the time of his death. The holding of the court is four-square to the effect for which it is cited, reading (at p. 210): " The Federal Employers' Liability Act declares who shall take in case of wrongful death, but leaves it as a matter of law how much and what proportion each shall take in its class, except when the State act requires that the appropriation must be made in the verdict, as in *McGinnis* v. *R. R.*, 228 U. S. 173, under the Texas act. The Federal statute makes no provision for the apportionment of the fund, and, therefore, the State statute controls. The source of the recovery is the United States statute, and that indicates only the different classes of the beneficiaries and the manner of ascertaining the amount due. But when the amount and class are ascertained, the sum paid or recovered must be distributed in that class according to the require-ment of the State law. In this case, there being a widow and a

child, the amount is to be divided between them according to our statute, two-thirds to the child and one-third to the widow. That matter is regulated by the State statute of distribution. *R. R. v. White*, 238 U. S. 507."

Of course, this adjudication is a precedent in no wise binding upon this court, and is scarcely entitled to weight equal to the contrary determinations of Surrogate FEELEY in *Matter of Barkcr* (134 Misc. 833) and of Surrogate WHEELER in *Matter of Gilbride* (140 id. 797), although the latter are of course also not precedents controlling on this court.

Since, however, the Supreme Court of North Carolina is an exceedingly distinguished tribunal, it is incumbent upon any other court whose sole aim is correct decision, to weigh its reasoning and the precedents on which it is based, and to compare it with the results reached by others confronted by like problems.

The authority cited by the North Carolina court for its determination is *Central Vermont Ry. Co.* v. *White* (238 U. S. 507). In that case the United States Supreme Court had before it an objection by the defendant railway respecting the manner of allocation of the sum assessed against it as the total damage. The court, after reaffirming the *McGinnis* case, holds (at p. 514) that the method of distribution of the damages among the persons who have suffered loss by reason of the death is no concern of such defendant. It then notes that the Federal Employers' Liability Act does not require an apportionment of damages by the jury and says (at p. 515): " That omission clearly indicates an intention on the part of Congress to change what was the English practice so as to make the Federal statute conform to what was the rule in most of the States in which it was to operate. Those statutes, when silent on the subject, have generally been construed not to require juries to make an apportionment. Indeed, to make them do so would, in many cases, double the issues; for, in connection with the determination of negligence and damage, it would be necessary also to enter upon an investigation of the domestic affairs of the deceased — a matter for Probate Courts and not for jurors."

Apparently the interpretation placed by the learned North Carolina court on the phrase that the apportionment of the recovery is properly a matter for the Probate Courts, is that such apportionment should be in accordance with the laws of distribution usually administered in such courts. Obviously such is not the necessary connotation of its meaning, and when coupled with the reaffirmation of the *McGinnis* case, which held (at p. 175): " The recovery must * * * be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sus-

tained some pecuniary loss," it seems to this court an improper one.

With this difference of opinion, it may be of aid to ascertain the views of other courts which have been called upon to interpret the Federal act or State acts based upon it, as distinguished from statutes in which, like that of New York, distribution is based on kinship and not on dependency.

The Supreme Court of California is certainly no less distinguished than that of North Carolina. In *Matter of Riccomi* (185 Cal. 458; 197 Pac. 97) it makes the following apposite observations (at p. 98): " In the light afforded by the views expressed in our decisions, it is obvious that the distribution among ' heirs ' of damages recovered by the statutory trustee must be upon the basis of the pecuniary loss of each, rather than upon his rights under our succession statutes with regard to property constituting the estate left by the decedent. How perfectly absurd it would appear to be to hold that where the whole amount of a recovery is given solely on account of the pecuniary injury to the surviving wife, one-half thereof must go to a surviving father or mother or brother or sister of decedent who has suffered no pecuniary injury whatsoever." Again (at p. 99): " In other words, the plain design of the statute is to give solely to the members of a certain class the opportunity to recover damages for such pecuniary loss as they had suffered by reason of the death of the decedent, and to recompense, in so far as the law can do so, each of such class who has suffered pecuniary loss."

In *Goen* v. *Baltimore & Ohio South Western Ry. Co.* (179 Ill. App. 566) the decedent lived with his mother and left a wife but no children. Respecting a recovery by the widow, the court said (at p. 570): " * * * it was necessary for her to prove that she received some support or pecuniary aid from her husband or had reason to believe that she would thereafter receive such, before she would be entitled to more than nominal damages."

In the very recent case of *Miller* v. *Miller* (257 Ill. App. 287) the same court said (at p. 299): " In our opinion it is clearly established: * * * (2) in case of the death of such employee the beneficiaries shall, in the first instance, be the surviving widow and children, but to entitle such widow or child to damages, the proofs must show that such widow or child had a reasonable expectation of pecuniary benefit which would have resulted from the continued life of the deceased employee; (3) the measure of damages is a substantive part of the act and is not controlled by State laws of descent, distribution, or otherwise."

In *Murphy* v. *Province* (153 Ark. 240) the Supreme Court of

Arkansas says (at p. 244): " The first question, therefore, which we must determine is, which one of the statutes the original cause of action and the recovery were predicated upon, for if the funds were recovered under the Federal statute, they must be distributed according to the terms of that statute."

Similar language or determination, necessarily involving like *rationes decidendi*, may be found in *Cincinnati, Indianapolis & Western R. R. Co.* v. *Little* (190 Ind. 662, 675, 681); *Louisville & Nashville Ry. Co.* v. *Jolly's Admx.* (232 Ky. 702, 724); *Veron's Admr.* v. *Veron* (228 id. 56, 64); *McGarvey's Guardian* v. *McGarvey's Admr.* (163 id. 242, 244, 245); *Duzan* v. *Myers* (30 Ind. App. 227, 235); *Bagley* v. *St. Louis* (268 Mo. 259); *St. Louis, I. M. & S. Ry. Co.* v. *Rodgers* (118 Ark. 263, 267, 270); *Jenkins* v. *Midland Valley R. R. Co.* (134 id. 1, 5, 8).

Finally, and most important, the decision of the United States Supreme Court in *Taylor* v. *Taylor* (232 U. S. 363) is to be noted. In this case, which arose in New York State, the decedent was killed in an accident in interstate commerce. His only surviving relatives were a widow and a father. Suit was brought by the wife and a compromise was effected by permission of the surrogate of Orange county. The father, who under the New York Statute of Distribution was entitled to one-half of the recovery, sued therefor at Special Term, where he was unsuccessful. On appeal this determination was reversed by the Appellate Division (114 App. Div. 634), which result was affirmed by the Court of Appeals (204 N. Y. 135). The United States Supreme Court, however, adopted a different view and reversed the judgment (232 U. S. 363). Its determination in this regard is accurately summarized in the first syllabus prefaced to the official report of the decision, which reads as follows: " The Employers' Liability Act of 1908, as amended in 1910, supersedes all state statutes upon the subject covered by it, and the distribution of the amount recovered in an action for death of an employe is determined by the provisions of that act and not by the state law."

It is obvious from this summary of decisions that on authority as well as theory, the position of the parties to the present proceeding is erroneous, and that the result previously reached by this court in the *De Martino Case (supra)* is correct. The only persons who can share in the distribution are relatives of the decedent who have sustained pecuniary loss as a result of his death, and such recovery is to be directly proportioned to the loss which each has sustained. Obviously it must follow from this that dependency and loss are questions of fact in relation to each claimant of a

portion of the fund, and must be established by proofs like any other facts.

In a determination of whether or not any particular individual has sustained loss by reason of the death, it is apparent that the first question of importance is the time as of which such loss must be determined. No decision of any court has been found which deals with this subject. On theory, however, the subject would appear free from difficulty. Since " The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employe wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death " (*Michigan Central R. R.* v. *Vreeland,* 227 U. S. 59, 68), it naturally follows that the loss or damage occurs when the wrongful injury or death occurs, and this is the time which must be looked to in the determination of whether any particular person has sustained compensatable damage by reason of the act of the defendant. The situation is closely analogous to that existing upon a breach of contract where the injured party is entitled to have his damages assessed on the basis of his loss at the time of the breach. The Federal statute in essence creates a contract between the employer and the dependent relatives of the employee that the latter shall not be wrongfully injured in the course of his employment. If such injury occurs, the contract is breached and the dependent is entitled to compensation for his demonstrated injury as a result thereof. In such a determination, however, all facts bearing upon the dependency and loss which occur up to the moment of the actual award are relevant in deciding the extent of the loss. The pertinent considerations in this regard are analogous to those adopted in determining the value of a life estate on the event and not on annuity tables where a death occurs within a brief period subsequent to the effective date. (*Matter of Suydam,* 122 Misc. 340, 342.)

The first inquiry in each case, therefore, is as to the persons within the statutory description who are in existence at the time of the death of the individual in question, who have suffered pecuniary injury by reason of his death. In this determination there is a presumption that minor children, by reason of the legal obligation of support of their parent, suffer injury as a result of his death even though they may have received no contribution from him during his lifetime. (*Duzan* v. *Myers,* 30 Ind. App. 227; *McGarvey's Guardian* v. *McGarvey's Admr.,* 163 Ky. 242.) In the latter case the court said (at p. 245): " * * * we think the legal liability of his father to his son was alone sufficient to constitute some ground of reasonable expectation of pecuniary

benefits of which he was deprived by the wrongful killing of his father; and that, therefore, he is entitled to participate in the recovery."

The same presumption would apply to a wife whom the decedent was under obligation to support. In both instances, however, such presumptions would be rebuttable by a demonstration that the natural legal obligation of the decedent had terminated prior to his death. (*Goen* v. *Baltimore & Ohio S. W. Ry. Co.*, 179 Ill. App. 566.) If such a showing were made, a minor child or wife would be remitted to a parity of position with an adult child and would be required to demonstrate some reasonable basis for anticipation of pecuniary benefit from the deceased, had he lived. Thus in *Duzan* v. *Myers* (30 Ind. App. 227) the court allocated a portion of the recovery to a twenty-eight-year old invalid daughter who had received contributions from the decedent in his lifetime, saying (at p. 235): "The fact that children are of adult age at the time of the father's death does not preclude them from recovering for the loss of such pecuniary benefit as they had a reasonable expectation of securing from additional accumulations had he not been killed."

On the other hand, any share in the recovery was, in *Murphy* v. *Province* (153 Ark. 240, 247), denied to an adult married daughter living separate from her father in the absence of a showing of receipt of contributions from him during his lifetime. (See, also, *Jenkins* v. *Midland Valley R. R. Co.*, 134 Ark. 1, 8.) To entitle any person not an absolute legal dependent to share in the recovery, " * * * the evidence must show that she had reasonable expectation of receiving pecuniary benefits from the deceased had he lived, which benefits must be measured by a money standard." (*Miller* v. *Miller*, 257 Ill. App. 287, 299.)

Where the apportionment is made in the original action in which recovery is had, this phase of the question presents no difficulty, since the total of the recovery will be the aggregate of the sums allowed to the various dependents who have demonstrated damage. In cases like the present, however, where a lump sum is available for distribution among all the injured parties, it must be divided in proportion to the several losses which are shown to have been sustained by the several individuals damaged (*Matter of Riccomi*, 185 Cal. 458; 197 Pac. 97, 98), which process "must depend very much upon the good sense and sound judgment" of the determining tribunal "upon all the facts and circumstances of the particular case." (*Duzan* v. *Myers*, 30 Ind. App. 227, 235.) (See, also, *Miller* v. *Miller*, 257 Ill. App. 287, 300.) In the absence of a showing of special circumstances, the widow would be entitled to support

for the duration of her life and that of her husband, whichever was the shorter, and this period would be calculated on mortality tables. Likewise, under ordinary conditions, infant children would receive compensation during the continuance of their minorities. (*Cincinnati, I. & W. R. R. Co.* v. *Little*, 190 Ind. 662, 681; *McGarvey's Guardian* v. *McGarvey's Admr.*, 163 Ky. 242, 245, 246; *Veron's Admr.* v. *Veron*, 228 id. 56, 64.)

These principles are aptly illustrated in *Veron's Admr.* v. *Veron* (228 Ky. 56), where the court explains its allocation of a sum received in compromise settlement of a claim, as follows (at p. 64): " In apportioning the recovery between the widow and his son, we held that, since the pecuniary loss of the son would terminate at his majority, he had an expectancy of support from his father only for four and a fraction years; that the expectancy of life of the widow being longer than that of the decedent, her expectancy of support was limited to decedent's expectancy of life at the time of his death which was 27 years. We, therefore divided the recovery between the widow and the son upon this basis — giving the widow 86.32 per cent. and the son 13.68 per cent. of the recovery." (See, also, *St. Louis, I. M. & S. Ry. Co.* v. *Rodgers*, 118 Ark. 263, 270.)

Of course, by a parity of reasoning to that which would permit an adult child to recover, a greater allowance might be made to a minor, where it was shown that in consequence of infirmity or injury, his ability of self-support after attaining majority would be impaired.

A single final situation requires a word of notice. If the position be sound that the compensatable loss occurs at the time of the death of the father, it must follow that all who are his dependents at the time are entitled to be compensated upon the principles hereinbefore reviewed from the time of the death and their subsequent deaths prior to the final fixing of the amount of their individual losses would result merely in a limitation of their respective recoveries and not in the total extinguishment of their rights. This point has been considered in only one case in the United States so far as the research of the court has been able to disclose. This contains an apparent dictum to the contrary (*Jenkins* v. *Midland Valley R. R. Co.*, 134 Ark. 1, 5), with which, for the reasons stated, this court is unable to agree.

By way of summary, therefore, it may be said that

(1) Any sums received as a result of the causes of action created by the Federal Employers' Liability (U. S. Code, tit. 45, § 51 *et seq.*) or Jones Acts (U. S. Code, tit. 46, § 688) must be distributed in accordance with the provisions of such acts.

(2) Such distribution is to be made to the persons who are shown

to have been pecuniarily damaged by the death of the decedent and in proportion to their demonstrated damage.

(3) *Prima facie*, a widow is entitled to a recovery for her probable life or that of her husband based on mortality tables, whichever is shorter; and infant children are likewise entitled for the periods of their respective minorities, but these presumptions may be rebutted by a showing of facts exonerating the decedent from his customary legal responsibility in this regard and demonstrating the non-existence both of such legal responsibility and of the probability of voluntary contribution.

(4) An adult child or other normally non-dependent person is *prima facie* entitled to no recovery, but this presumption may be rebutted as to any person within the description of the statute by a showing of facts demonstrating the probability of pecuniary benefit by the decedent had he lived.

(5) The damage occurs on the death of the deceased and losses and corresponding compensation are to be computed from that date.

(6) Either a widow or minor child may be entitled to an award in excess of its natural *prima facie* rights as stated in " 4," *supra*, by demonstrating the existence of conditions of illness or dependency, making it probable that the dependency upon the decedent and consequent loss as a result of his death were beyond those in the usual case.

It follows in the case at bar that a hearing must be had for the purpose of developing the pertinent facts upon which the allocation of the recovery herein must be based. These will include the ages of decedent and of all dependents at the time of the death and any special circumstances relevant to such dependency which may have existed.

Proceed accordingly.