In the Matter of the Estate of IESCHIEL SHAPIRO, Also Known as IECHIEL SHAPIRO, JECHIEL SCHAPIRO and LACHIEL SHAPIRO, Deceased.

Surrogate's Court, Kings County, January 3, 1935.

*David T. Smith*, for the petitioner.

*Louis Koenigsberg*, for the executors.

WINGATE, S. The present proceeding raises an interesting and hitherto undetermined question respecting the scope and meaning of subdivision 9 of section 18 of the Decedent Estate Law which provides for the manner in which rights to elect against the will of a spouse may be waived.

The pertinent facts in the case at bar, which are either undisputed or amply established by the proofs, demonstrate that in 1931, when the critical acts were performed, the testator, Ieschiel Shapiro, was about eighty-three years of age and Sarah Riva approximately seventy. Both had been married but their respective spouses had died. Shapiro made frequent calls upon Mrs. Riva and in response to certain questions by her adult son, stated that he was contemplating marriage.

On June 15, 1931, Shapiro made the will which has been admitted to probate and which, except for item "sixth," gave his entire estate to his adult sons and daughters. The excepted provision read: "I hereby give and bequeath unto my wife in the event that I should remarry, the sum of $500 absolutely and forever."

Shortly prior to this time he had made certain transfers of property to a son, one of which was in return for an agreement for free occupation of certain premises during his life.

On June sixteenth Mrs. Riva's son drove his mother and the decedent down in his car and the latter two visited the law offices of Leon Jaffe. The occurrences which then transpired were adduced without objection from Mr. Jaffe's testimony, which was uncontradicted, straightforward and wholly credible. It may further be noted that he is wholly unconnected with the present litigation.

The parties explained their contemplated marriage and that it was their desire to make an agreement regulating the rights which

the prospective wife should have in Mr. Shapiro's property. Mr. Jaffe thereupon drew an agreement and read and fully explained its contents to Mrs. Riva and told her of the nature and extent of Mr. Shapiro's property, the transfers which he had made of parts thereof, and the will which he had theretofore executed. Mrs. Riva stated that she understood that she was to get only $500 from decedent's property and in return was waiving all rights against his estate; that she considered it entirely fair and that she was not marrying him for what she would get when he died.

With these preliminaries accomplished, the agreement was executed by both parties and acknowledged before a commissioner of deeds. It recited their mutual agreement:

" *First.* That the said Sarah Riva shall receive and accept from the estate of Iechiel Shapiro, after his death, if she shall survive the said Iechiel Shapiro as his widow, the sum of Five hundred ($500) Dollars, in place and stead of all rights, which, as widow, the said Sarah Riva might otherwise have, either as dower in the real estate of said Iechiel Shapiro or as a distributive share of the personal property under any statutes now or hereafter in force or effect.

" *Second.* The said Iechiel Shapiro hereby agrees that the sum of Five hundred ($500) Dollars shall be fully paid to the said Sarah Riva if she shall survive him, as his widow, as soon after his decease as may be practicable, and said sum, until paid, shall constitute a charge upon the entire estate of which the said Iechiel Shapiro may die seized or possessed."

After the execution of this agreement, the parties intermarried and lived together until Mr. Shapiro's death on March 29, 1934. Thereafter the widow duly served and filed a notice of election to take a share in the estate pursuant to section 18 of the Decedent Estate Law. The present proceeding is initiated under section 145-a of the Surrogate's Court Act to determine her rights in this regard. It is admitted that the intestate share of the estate to which the widow would be entitled under section 18, in case she is not barred from asserting her rights, would exceed $500.

Subdivision 9 of section 18 of the Decedent Estate Law, as existing at the time of the execution of this agreement, and as still in force, reads:

" 9. The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instrument subscribed and duly acknowledged, or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement so executed, made before or after marriage. An agreement so executed made

before the taking effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section."

An analysis of the provisions of this subdivision indicates the legislative intent to cover three varieties of cases, and to provide that in three situations no right of election shall exist. That contemplated in the last sentence, concerning an agreement executed prior to September 1, 1930, is, of course, not here pertinent, since that at bar was entered into on June 16, 1931.

Waivers subsequent to the effective date of the statute are obviously of two varieties, *first*, those which affect only " a particular will," and, *second*, those which purport to waive the right " to take against any last will and testament of the other whatsoever." The acts prescribed for the accomplishment of the purpose in the two contemplated situations differ from each other. In the former, merely a subscribed and acknowledged instrument is specified as a requirement, while in the latter " an agreement " is made the condition precedent.

The purpose of the difference in the specified modes of waiver is not readily apparent unless it be that for a general waiver the Legislature contemplated a more formal document based on a consideration moving to the person by whom the potential right was surrendered.

Whatever the reason for the difference, it is obvious that the present document, duly signed by both parties and containing engagements binding upon each, comes within any definition of " an agreement " which is legally conceivable, the mutual promises of the parties constituting a valid consideration each for the other.

The question, therefore, resolves itself purely into one of interpretation of this agreement and of the ascertainment of whether or not its effect is a waiver of the right of election created by section 18. The right granted by the terms of the statute is " to take his or her share of the estate " of the deceased spouse " as in intestacy." The rights " in place and stead of " which the present petitioner agreed to accept $500, were stated to be " all rights, which, as widow, the said Sarah Riva might otherwise have, either as dower in the real estate of said Iechiel Shapiro or as a distributive share of the personal property under any statutes now or hereafter in force."

The share of the wife in this case " to take * * * as in intestacy " is regulated by subdivision 1 of section 83 of the Decedent Estate Law, which, so far as pertinent, provides that one-third of " the surplus of his * * * personal property, after payment of debts * . * * shall be distributed " to the

wife. Her rights, therefore, under the statute, then and now in force, was "a distributive share of the personal property" of the decedent equal to one-third in value thereof. She expressly waived "all rights which" she "might otherwise have * * * as a distributive share of the personal property" of the decedent. It seems obvious, therefore, that the inevitable meaning of her agreement was to waive the precise rights which would have been hers under section 18 had she not relinquished them in the exact manner specified in the statute for that purpose.

It is urged on her behalf that the omission to particularly mention a release of her rights under section 18 will permit her repudiation of the agreement which she clearly understood. She did more, since she expressly waived "all rights * * * under any statutes now or hereafter in force." The greater must inevitably include the lesser. As aptly expressed in the familiarly epigrammatic words of Judge CARDOZO: "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day." (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.)

It will, therefore, be determined that the widow is bound by her waiver and possesses no right to elect against the will.

Enter decree on notice.