In the Matter of the Application of VINCENT L. CORONA, for Determination as to Validity, Construction, Interpretation or Effect of the Disposition of Property Contained in the Last Will and Testament of JOHN CARNEVALE, Deceased.*

CARMELLA C. CARNEVALE, Appellant; VINCENT L. CORONA, as Executor, etc., of JOHN CARNEVALE, Deceased, Respondent.

Third Department, June 25, 1936.

*Coley & Kiley [Edward A. Kiley of counsel], for the appellant.*
*Calli & Nemeti [Frank R. Nemeti of counsel], for the respondent.*
*Walter W. Wilcox*, special guardian, for Jennie and Antoinette Carnevale, infants.

* Revg. 158 Misc. 290.

HEFFERNAN, J. This appeal involves a construction of the will of John Carnevale, deceased.

On February 1, 1916, deceased, a widower with seven children, executed his last will and testament. A few hours after the execution of his will he married appellant Carmella Chiarullo, and as a result of such marriage two children were born. Decedent died on September 18, 1935, survived by his widow and nine children. His will was admitted to probate, without objection, by the surrogate of Madison county on October 14, 1935.

The provisions of the will disposing of the testator's property are contained in the second and third paragraphs thereof and read as follows:

" *Second.* I give and bequeath unto Carmella Chiarullo, my housekeeper, all the income from my house and lot situate at 95 Stone Street in the City of Oneida, Madison County, New York, so long as she is not living with any other man either as wife or housekeeper.

" *Third.* I give and bequeath all the rest, residue and remainder of my real and personal property to my legal heirs and next of kin."

At the time of his death testator was possessed of personal property somewhat in excess of $2,000 and was the owner of real property of the approximate value of $14,300.

In his construction of the will the surrogate decreed that the marriage of testator to appellant did not operate as a revocation of his will; that appellant is entitled to the income from the property referred to in the second paragraph of such instrument and that in addition thereto she is entitled to dower in all the real property of which decedent was seized at the time of his death and during converture. From that determination the widow has come to this court.

At the time of testator's death section 35 of the Decedent Estate Law read as follows: " Revocation by marriage. If after making any will, such testator marries, and the husband or wife survives the testator, such will shall be deemed revoked as to such survivor, unless provision shall have been made for such survivor by an ante nuptial agreement in writing; and such surviving husband or wife shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as he or she would have been, if such will had not been made. Such husband or wife shall be entitled to such share or portion of the estate from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will. No evidence to rebut such presumption of revocation shall be received, except to show the existence of such ante nuptial agreement. This section as amended

shall apply only to wills executed prior to September first, nineteen hundred thirty; and wills executed after such date shall not be affected in any way by the provisions of this section as heretofore contained herein or as amended."

The surrogate determined that the provision in the will for the benefit of the widow created an antenuptial agreement within the meaning of this section.

We think otherwise. By the terms of section 35 of the Decedent Estate Law in force at the time this will was executed a will was deemed revoked by marriage and birth of issue " unless provision shall have been made for such issue by some settlement or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision."

This section was amended by chapter 293 of the Laws of 1919 to read: " Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made. No evidence to rebut such presumption of revocation shall be received, except as herein provided." This act of 1919 also repealed section 36 of the Decedent Estate Law, which provided that " A will executed by an unmarried woman, shall be deemed revoked by her subsequent marriage."

This section was again amended by chapter 459 of the Laws of 1932 to read as it now is.

Prior to the amendment of 1932 to the section in question courts were justified in holding that where a testator made a testamentary disposition similar to the one in the will before us, in favor of one who subsequently assumed the status of wife, such disposition constituted provision for her within the meaning of such section and operated as a bar to the revocation of such will. (*Matter of Gaffken*, 114 Misc. 693; affd., 197 App. Div. 257; affd., 233 N. Y. 688.)

It is quite significant that the Legislature by the 1932 amendment to section 35 of the statute under discussion makes the subsequent marriage the sole test of revocation " unless provision shall have been made for such survivor by an ante nuptial agreement in writing." This amendment worked a substantial change in

the law. To avoid revocation provision for a surviving spouse must be made by an antenuptial agreement in writing.

For the meaning and effect of the will we are to look to the statute in force, not at the time the will was executed, but at the time of testator's death. (*Matter of Gaffken, supra.*)

In the instant case there is no evidence whatever to show that any provision was made for the widow by her deceased husband by any antenuptial agreement. Certainly the provision in the will for her benefit cannot be regarded as such. Not one word or line in the will indicates that such was the testator's intention. There is no proof in the record to establish that the widow had any knowledge that her husband made any testamentary provision for her benefit.

Antenuptial settlements are contracts or agreements between a man and woman before marriage, but in contemplation and generally in consideration of marriage, whereby the property rights and interests of either the prospective husband or wife, or both of them, are determined, or where property is secured to either or both of them, or to their children. No particular form of words is required to constitute a marriage settlement, any language showing an intention to create a settlement being sufficient. But there must be a definite promise or agreement, and a mere declaration of an intent to make a settlement is not sufficient. An antenuptial contract will not be presumed from the fact that the parties entered into a contract of marriage. (30 C. J. 627.) An antenuptial contract will not be enforced unless it is in writing. (*Lamb* v. *Lamb*, 18 App. Div. 250.) Under our statute every agreement made in consideration of marriage is void unless it be in writing, except a mutual promise to marry. (Pers. Prop. Law, § 31; *Hunt* v. *Hunt*, 171 N. Y. 396.) ° Our courts do not recognize tacit antenuptial contracts presumed from the fact that the parties entered into a contract of marriage. (*Matter of Majot*, 199 N. Y. 29.) There is not a scintilla of evidence in the record to suggest the existence of an antenuptial agreement, much less to support and establish it. We have no hesitation in reaching the conclusion that testator's marriage revoked his will as to appellant and she is entitled to the same share in his estate as she would have been if the will had not been made. Counsel for appellant contends that his client is entitled to assert or waive her rights to treat the will as revoked under section 35 of the Decedent Estate Law, and that if she elects to waive her right to revocation she would be entitled to the income under the second paragraph thereof and that she would also take as one of the heirs and next of kin under the third paragraph.

We think counsel is mistaken. If the will was revoked by testator's marriage, as we are deciding, then no one may assert or waive rights thereunder. The only provision for an election by a surviving spouse is found in section 18 of the Decedent Estate Law, the pertinent provision of which is: " Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section."

It will thus be seen that the right of election is made dependent entirely upon three conditions: (1) That a testator died after August 31, 1930; (2) that he left a surviving wife; (3) that he left a will executed after August 31, 1930. (*Matter of Greenberg*, 141 Misc. 874; affd., 236 App. Div. 733; affd., 261 N. Y. 474.)

The will in question having been executed prior to August 31, 1930, the right of election is not available to appellant.

The determination appealed from should be reversed and the matter remitted to the Surrogate's Court to enter a decree construing the will in accordance with this opinion, with costs to all parties appearing payable out of the estate.

HILL, P. J., RHODES, McNAMEE and BLISS, JJ., concur.

Decree reversed on the law and matter remitted to the Surrogate's Court of Madison county to enter a decree construing the will in accordance with the opinion, with costs to all parties filing briefs, payable out of the estate.