In the Matter of the Estate of JOHN L. CURLEY, Deceased.

Surrogate's Court, Kings County, December 15, 1936.

*Edward L. Kelly*, for St. Mary's Roman Catholic Church, charitable legatee.

*Cassidy & Cassidy*, for St. Mathew's Roman Catholic Church, charitable legatee.

*Jacob L. Holtzman*, for the widow and assignee of two of the residuary legatees.

*Foley & Martin*, for the executor, James A. Martin.

*Walter Jeffries Carlin*, special guardian for Margaret Curley, incompetent.

WINGATE, S. The question here presented concerns the propriety of the award of allowances to counsel for various parties to proceedings under section 145-a of the Surrogate's Court Act, for the determination of the validity and effect of an attempted election by a surviving spouse to take in contravention of the terms of a will, and under subdivisions 2 and 8 of section 18 of the Decedent

Estate Law for an adjudication of the effect of the validation of the elective right on the remaining testamentary directions.

The applications rely on the provisions of section 278 of the Surrogate's Court Act, and are based upon the theory that the services rendered by the respective attorneys were performed in a proceeding for the construction of the will.

The present applicants are four in number and consist of the assignee of two out of ten residuary legatees, the special guardian for an incompetent residuary legatee, and two charitable legatees to whom the will gave general legacies of $5,000 and $1,000, respectively, which, by reason of the effectuation of the widow's right of election, have been reduced to approximately $3,400 and $675.

These applicants naturally fall into two classes, namely, the special guardian, who is entitled to reasonable compensation for his services in any event (Surr. Ct. Act, § 280; *Matter of Manzi*, 155 Misc. 670, 675; *Matter of Mackenzie*, Id. 822, 825), and the competent adult parties other than fiduciaries whose rights to allowances are, by section 278 of the Surrogate's Court Act, conditioned on a demonstration that the proceeding in which the allowance is sought is one " to construe a will or after appeal in such a proceeding."

The question is thereupon presented as to whether a proceeding under section 145-a of the Surrogate's Court Act which empowers the surrogate to make a determination of the validity and effect of the election of a surviving spouse under section 18 of the Decedent Estate Law, is a proceeding "to construe a will" within the meaning of section 278 of the Surrogate's Court Act. That it was not within the legislative contemplation at the time the addition to section 278 extended the authority to the court to grant allowances in construction proceedings, is obvious from the fact that this addition was made by chapter 702 of the Laws of 1928, whereas section 145-a was not enacted until 1929 and did not take effect until 1930.

The purpose of the authority conferred upon the court by section 145-a of the Surrogate's Court Act is not directly or primarily for the purpose of determining any question respecting the meaning or effect of the will, but is for an ascertainment of whether or not the attempted elector is justified in the assertion of a right to take a portion of the estate of the decedent as in intestacy. This may depend on any one of many considerations wholly independent of the provisions of the testamentary document itself, as, for example, as to whether the attempted elector was lawfully married to the decedent; whether he had abandoned or failed to support the decedent, and if so whether there had been a reconciliation or

condonation of the offense (*Matter of Sidman*, 153 Misc. 735, 737); whether the will was drawn or republished subsequent to September 1, 1930 (*Matter of Greenberg*, 141 Misc. 874, 880; affd., 236 App. Div. 733; affd., 261 N. Y. 474); whether the right to elect had been waived in the manner provided by law (*Matter of Shapiro*, 154 Misc. 55, 58); whether the attempted elector had made timely assertion of the right (*Matter of Zweig*, 145 Misc. 839, 847; *Matter of Avchin*, 158 id. 388, 391); whether it had been asserted by a person authorized to do so (*Matter of Coffin*, 152 Misc. 619, 624); whether the notice of election was in proper form and had been properly served and filed (*Matter of Zweig*, 145 Misc. 839, 849), etc.

Judging by the experience of this court, it seems probable that even in these early days of limited experience of the bar with the requirements of section 18 of the Decedent Estate Law, less than one case out of ten involving a determination of the validity of an attempted exercise of the right of election has required any reference to the terms of the testamentary instrument itself. With the increase of familiarity on the part of testamentary draftsmen with the minimum gift permissible to avoid the possibility of an election which is inevitable with the lapse of time, it is probable that even this comparatively insignificant percentage will decrease.

Even in those instances in which reference to the testamentary script is required for the purpose of ascertaining whether the elective right has been validly exercised as a result of a failure by the testator to comply with his minimum legal obligations in respect to devolutionary directions, the process is no more a construction of the will than is a similar reference to the testamentary instrument for the purpose of ascertaining whether he has complied with an agreement adequately to compensate services by will. (Cf. *Matter of Mason*, 134 Misc. 902, 914, 915; *Matter of Abruzzo*, 137 id. 299, 304; *Matter of Smallman*, 139 id. 501, 504.)

By the express terms of the enactment itself, the authority granted under section 145-a is merely for a determination of " the validity or effect of any such election " and not for any decision in respect to the validity or effect of the will itself. The two things are quite different. It follows, therefore, that a determination under this section, whether made in an independent proceeding initiated for this express purpose, or on an accounting, is not a construction of the will within the meaning of section 278, wherefore there is no statutory justification for an award of allowances in excess of costs to the ordinary parties thereto.

Although the impropriety of allowances to parties or their counsel appears evident in a proceeding to determine the validity

of the exercise by the surviving spouse of the right of election granted by section 18 of the Decedent Estate Law, a different situation is encountered in those instances in which the right has been determined to exist, and the litigated question relates to the resulting rights of the beneficiaries named in the will. In such cases a dislocation of the terms of the testamentary script has inevitably resulted, and the problem presented concerns the consequent rights of the beneficiaries under the will in the diminished distributable estate. Questions of abatement are, therefore, present for adjudication which require an analysis and interpretation of the will itself since the devolutionary rights of those entitled to share are determinable as a result of its directions from which alone the testamentary wish is ascertainable. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weisman*, 137 Misc. 113, 114; affd., on opinion of this court, 232 App. Div. 698; *Matter of Pelcyger*, 157 Misc. 913, 926; *Matter of Bommer*, 159 id. 423, 424.)

If, as in the case at bar, the effectuation of the right of election has resulted in a substantial withdrawal of the assets of the estate distributable under the will, the mode of testamentary distribution of the balance is a true instance of testamentary interpretation which may, under the authority of section 278, authorize allowances to be paid from such remaining distributable portion, as in any other construction proceeding.

It is, of course, patent that no allowance may be made chargeable upon the portion of the funds in the hands of the executor which pass to the surviving spouse as in intestacy. As to the devolution of these assets, no construction is required since they do not pass by virtue of the terms of the will but devolve as a result of the fiat of the statute itself. (*Matter of Curley*, 151 Misc. 664, 670; modfd. on other grounds, 245 App. Div. 255; affd., 269 N. Y. 548.) They are, therefore, wholly withdrawn from subjection to the terms of the will, and are not properly subject to diminution or charge by reason of considerations or proceedings which alone affect the other portion of the assets of the estate, the devolution of which is determinable from the terms of the will.

The concrete result is, therefore, that whereas there is no justification in the law for the making of allowances other than costs to general parties in a proceeding under section 145-a of the Surrogate's Court Act, allowances may be so granted from the portion of the estate not passing as in intestacy upon the validization of the right of election, when the question of the manner of devolution of the remainder of the estate is presented for adjudication. The identity of the persons to whom allowances may then be made, and the

permissible amounts thereof, are then governed by the same considerations which control the determination of similar questions in the ordinary run of construction proceedings.

The provisions of section 278 of the Surrogate's Court Act relating to allowances on the construction of a will were made the subject of comment and analysis by the court in *Matter of Lyons* (160 Misc. 429, 431) in which the erroneous popular conception of such an allowance as a reward for " assistance to the court " in the construction was noted, and it was pointed out that the essential basis for the allowance was the usual one of at least partial success in some of the frequently multitudinous issues of a proceeding for testamentary interpretation.

Assuming the presence of this element of success, the amount of the permissible allowance to a given party or his attorney must bear some reasonable relation to the financial magnitude of the interest which the particular attorney is attempting to protect. In this aspect, an allowance of this type in reality represents an exoneration or indemnification of the particular party for the expenses to which he has been put for counsel fees in connection with the proceeding. This is, in reality, a return to the basic theory of costs, which were originally considered as an indemnity to the party for the expenses of the suit (*Stevens* v. *Central Nat. Bank*, 168 N. Y. 560, 566), and to furnish the measure of compensation between attorney and client. (*Keenan* v. *Dorflinger*, 19 How. Pr. 153, 154.) It is for this reason that costs and allowances have uniformly been held to be the property of the client and not of the attorney. (*Matter of Howell*, 215 N. Y. 466, 474; *Barry* v. *Third Avenue R. Co.*, 87 App. Div. 543, 547; *McIlvaine* v. *Steinson*, 90 id. 77, 82; *Baumwald* v. *Two Star Laundry Service*, 234 id. 392, 395; affd., 260 N. Y. 538.) With the increasing expense of litigation during the passing years, and the growing discrepancy between the amounts allowed by statute as indemnity to the party and the actual expenditures required, this basic conception has become obscured. The portion of section 278 of the Surrogate's Court Act now under consideration is, therefore, merely a partial return to basic actualities and fundamental theory, to the effect that in a proceeding for will construction a party who enjoys some measure of success in his contentions is entitled to some indemnity or reimbursement of at least some reasonable proportion of his total expenses in the proceeding.

In this aspect, however, the sum which may be allowed as such indemnity or reimbursement may certainly not exceed a sum which would fairly represent the liability of the client to the attorney for the services performed. In any evaluation of such amount, the

financial magnitude of the interest of the client is an important, indeed, perhaps even a predominant factor. (*Matter of Spanier*, 148 Misc. 879, 883; affd., 241 App. Div. 615; *Matter of Sharp*, 140 Misc. 427, 433; *Matter of Mackenzie*, 155 id. 822, 825; *Matter of Woolfson*, 158 id. 928, 935.) Except possibly in a test case involving far-reaching consequences or under other extremely extraordinary circumstances, it is inconceivable that a client would obligate himself for, or a court would deem reasonable, a payment to his attorney for services exceeding from one-third to one-half of the total amount involved, particularly in a case in which the obligation to compensate was absolute and not contingent. Indeed, it has been said that an agreement for a contingent payment of fifty per cent of the sum recovered is viewable with suspicion as to its reasonableness. (*Matter of Uravic*, 142 Misc. 775, 777; *Matter of Mackenzie*, 155 id. 822, 825; *Matter of Marinano*, 158 id. 825, 828.)

Argument is frequently made, and indeed is advanced in the present proceeding, that account should be taken in a determination of the allowance of compensation to an attorney for benefits inuring from the result attained to persons whom the particular attorney did not represent. A moment's reflection is sufficient to demonstrate the complete unsoundness of such a position in view of the basic theory of indemnity underlying the entire question of allowance. As to such unrepresented parties the attorney is a pure volunteer with no legal or moral claim to remuneration from them, wherefore no allowance to him is possible based on the theory of indemnity to them for such non-existent liability. (*Matter of Winburn*, FOLEY, S., 160 Misc. 49, 52; *Matter of Frame*, FOLEY, S., 162 id. 34.)

Applying these principles to the present applications for allowances, it follows that since the proceeding for the determination of the results to the legatees under the will following the validization of the election (*Matter of Curley*, 160 Misc. 844) was properly classifiable as a proceeding for construction of the will within the terminology of section 278 of the Surrogate's Court Act, the attorneys for individual parties were authorized to apply for special allowances in that proceeding.

The only issue therein which was actively litigated was whether the residuary legatees should bear the entire brunt of the abatement in exoneration of the general legatees, or whether there should be a *pro rata* abatement in the benefits accruing to all beneficiaries under the will. On this issue the contention advanced by the residuary legatees was wholly sustained and that of the general legatees was completely rejected. In view of this total non-success,

the application for an allowance by the attorneys for the latter is denied both as a matter of law and as one of discretion.

So far as is disclosed by the record, the total financial interests in the estate of the two residuary legatees, the attorney for whose assignee makes application for allowance, amount to approximately $7,500. In his moving papers he asserts that additional receipts will swell this total to approximately $8,300. Assuming this uncontroverted assertion to be correct, it would follow that even if his retainer were on a thirty per cent basis, the maximum obligation of his clients to him would amount to slightly less than $2,500. Since the allowance here contemplated is, as noted, merely for purposes of indemnity, this must furnish the extreme limit of permissible allowance.

The special guardian who represents one residuary legatee requests an allowance of $1,200. As noted in *Matter of Mackenzie* (155 Misc. 822, 825) his relation to his ward is in essence the same as that of a regularly retained attorney to an adult client. Adopting the same basis in respect to the interest of his single residuary legatee as that just noted in respect to the double representation of the other applicant, his request is reasonable and will be allowed.

The two allowances, aggregating $3,700, thus made will be paid from the portion of the estate assets which do not pass to the surviving spouse under her election.

Submit decree on notice in conformity herewith.