In the Matter of the Estate of ABRAHAM GOLDBERG, Deceased.

Surrogate's Court, Kings County, September 30, 1937.

*Maurice Brandt* [*Victor Levin* of counsel] for widow, Pauline Goldberg.

*Potter & Potter* [*Edward Potter* of counsel], for the executors.

*Abraham I. Wolf*, for Hebrew School of Williamsburgh, legatee.

*Henry C. Turner*, special guardian, for Paul Irving Denver, infant distributee.

*Israel Grunstein*, for Talmud Torah.

WINGATE, S. This is an application by counsel for the widow for an allowance under section 278 of the Surrogate's Court Act for services performed by him in connection with a proceeding which he denominates as one for " construction " within the terminology of the statute. His opponents adopt the position that not only is his characterization of the nature of the proceeding incorrect, but that even were the reverse to be granted, the sum which he requests is exorbitant.

The facts underlying the controversy are that incident to the accounting by the executors, a determination was requested as to the validity and effect of the will in so far as it concerned the rights of the widow. It was an ante-nuptial document and the widow asserted that the subsequent intermarriage of the parties effected a partial revocation of its terms under section 35 of the Decedent Estate Law.

The referee, to whom the matter was submitted, held that under the unusual factual demonstration adduced, the section was inoperative and the will valid. This court agreed with his result (*Matter of Goldberg*, 157 Misc. 49), and its determination was unanimously affirmed by the Appellate Division (249 App. Div. 751). Thereafter leave to appeal to the Court of Appeals was granted by the latter and resulted in a reversal (275 N. Y. 186) which held that " Section 35 of the Decedent Estate Law, as amended, applied to the facts of this case " and that the decedent's " will was revoked by his subsequent marriage."

It will be seen, therefore, that the entire proceeding related to the validity and construction of the particular testamentary document made by the decedent and was, therefore, within the accepted description of a construction proceeding as envisaged by section 278 of the Surrogate's Court Act.

In opposition, the executors cite the decision of this court in *Matter of Curley* (161 Misc. 391), which held that a proceeding under section 145-a of the Surrogate's Court Act for the purpose of determining the validity of an election by a surviving spouse under section 18 of the Decedent Estate Law was not a proceeding

for a construction of the will. The citation is not apt since the two proceedings are essentially diverse in nature.

As has been noted on innumerable occasions, a construction proceeding, so called, may require either or both of two varieties of determinations. The first, and more common, concerns the actual meaning of the language employed by the testator in the document when the script is read in the light of the circumstances surrounding him at the time of its execution. The second concerns the validity of the disposition actually intended to be made by the will. (*Matter of McCafferty*, 142 Misc. 371, 372; affd., 236 App. Div. 678; *Matter of Howells*, 145 Misc. 557, 559; *Matter of Von Deilen*, 154 id. 877, 881; *Matter of Dialogue*, 159 id. 18, 20.) The determinations in both instances are based on the document itself when read in connection with the situation of the testator, in the one case, and the applicable rules of law, in the other, the essential and indispensable element on both occasions being the will.

In the vastly preponderant number of cases this is not true of a proceeding for the determination of an asserted right of election by a surviving spouse under section 145-a of the Surrogate's Court Act. Here the question for decision is not the effect and validity of the will, but in the language of the section " the validity and effect of any election " " under section eighteen of the Decedent Estate Law." Under the terms of section 18, the surviving spouse is accorded such right if certain carefully prescribed conditions exist, and the purpose of the inquiry is merely an ascertainment of the pertinent facts in this connection, and, as pointed out in *Matter of Curley* (161 Misc. 391, 393), " this may depend on any one of many considerations wholly independent of the testamentary document itself," and, according to demonstrated experience, " less than one case out of ten involving a determination of the validity of an attempted exercise of the right of election has required any reference to the terms of the testamentary instrument itself " (p. 394).

There is, accordingly, no analogy between the two types of cases. A determination of the validity of an asserted right to elect under section 145-a is not a construction of the will within the meaning of section 278 of the Surrogate's Court Act, whereas a decision of the devolutionary effect to be given to the document which may be wholly or partially invalid by reason of infringement of section 42 of the Real Property Law, of section 26 of the Decedent Estate Law or, as here, of section 35 of the Decedent Estate Law, is such a construction. The parties and the Court of Appeals in this very case so treated it, and it has been thus considered on innumerable other occasions. (See *e. g., Matter of Carnevale*, 248 App. Div.

62, 63; *Matter of Bent*, 142 Misc. 811, 815; *Matter of Mosher*, 143 id. 149, 150; *Matter of Holmes*, 147 id. 394, 398.)

The first objection of the estate representatives to the power of this court to award an allowance to counsel for the widow in this proceeding must consequently be overruled. The proceeding was essentially one for construction of the legal effectiveness of the will and the two appellate determinations were addressed solely to this question. Under such circumstances the final paragraph of section 278 of the Surrogate's Court Act becomes applicable which provides that " when the decree is made in a proceeding to construe a will, or after appeal, in such a proceeding, pursuant to the direction of the appellate court, the surrogate may, in his discretion, allow to an executor, trustee, guardian, or any party to said proceeding, such sum as the surrogate deems reasonable for his counsel fees and other expenses necessarily incurred in such a proceeding or on such appeal, and the decree may direct payment to the attorney for whose services such allowance is made."

Whereas the grant of costs is discretionary with the court and is, theoretically, at least, subject to review, the exercise of the discretion is a matter with which appellate courts will seldom concern themselves. (*Matter of Richmond*, 63 App. Div. 488, 494; *Matter of Reimers*, 264 N. Y. 62, 65.) This condition, far from warranting a capricious denial, imposes upon the court of first impression the obligation of painstaking evaluation of each situation to the end that even-handed justice be accorded to all. Since, therefore, the award of an allowance in a construction proceeding, at least to a party who has achieved some measure of success in the validization of his contentions (*Matter of Sloat*, 143 Misc. 170, 172; *Matter of Curley*, 161 id. 391, 397, 398), has become almost a matter of course, the sole questions for determination by the court on such an application are the degree of success achieved by the applicant and the amount of the indemnification for expenses (*Matter of Lyons*, 160 Misc. 429, 430; *Matter of Curley*, 161 id. 391, 396) which would be proper in view of all of the relevant facts of the case.

In the present instance the success of the applicant is outstanding. So far as the construction question was concerned, there was only a single issue. On this, he was ultimately wholly successful in the face of adverse decisions by an exceptionally experienced referee, by this court, and by five of the most distinguished jurists on the bench of the intermediate appellate tribunal.

As a result of his success, his client will receive one-third of the estate instead of the sum of $5,000. An insuperable difficulty to any scientific evaluation of the services rendered in this increase in recovery, at the present time, is, however, encountered in the fact that the opponents are in violent and irreconcilable disagree-

ment as to the value of the increased benefit thus attained, the executors maintaining that the net distributable estate cannot exceed $40,000, whereas counsel for the widow assert that the figure will more closely approximate $60,000. If the former sum turns out to be correct, the distributive share of the widow will be about $13,000, or an increase of approximately $8,000 over that which she would have been entitled to receive under the terms of the will. On the higher appraisement, these figures would be $20,000 and $15,000, respectively. A decision based on either supposition would be merely guesswork at the present time and unjust to one or the other party depending upon the result of the ultimate demonstration.

All which may be determined at the present time, therefore, is that the attorney for the widow is entitled to some allowance for services on the construction both in this and in the appellate courts. Its concrete fixation must await the ultimate demonstration of the actual benefit conferred upon her as a result of his efforts. (*Matter of Curley*, 161 Misc. 391, 396, 397.)

The adoption of this procedure will work no hardship on the applicant, since the court possesses no authority of affirmative award in this connection except upon the entry of the decree. (Surr. Ct. Act, § 278; *Matter of Manzi*, 155 Misc. 670, 673.)

Proceed in conformity herewith.