In the Matter of the Estate of HELEN B. DWYER, Deceased. JAMES P. DUFFY, III, as Former Guardian ad Litem of LOIS A. LUCAS, an Incompetent (Now Deceased), Appellant; LOUIS H. HALL, JR., as Executor of HELEN B. DWYER, Deceased, Respondent.

First Department, April 28, 1983

APPEARANCES OF COUNSEL

*Walter J. Gumersell* of counsel (*James P. Duffy, III* and *Donald F. Leistman* with him on the brief; *Berg & Duffy,* attorneys), for appellant.

*Elliot P. Hoffman* of counsel (*Morton J. Turchin* with him on the brief; *Turchin & Topper, P. C.,* attorneys), for respondent.

OPINION OF THE COURT

SILVERMAN, J.

This is an appeal from an order of the Surrogate's Court, New York County (LAMBERT, S.), ordering appellant to repay to the decedent's estate $40,298, being his compensation as guardian ad litem, and directing the entry of judgment in favor of the estate against appellant in that sum.

Between 1934 and 1938 Kurt Schmieder, a German national, transferred certain property in this country first to his sister-in-law and then to the decedent Helen B. Dwyer, who was a secretary employed by Mr. Schmieder's lawyer, Louis Hall, Sr. Ms. Dwyer died in May, 1970. Her will left the bulk of her estate to Mr. Hall's children. A series of litigations ensued having as their core a three-way dispute among (a) Schmieder (and after his death, his estate); (b) decedent Dwyer's distributees who would take if there were no will; and (c) the legatees under the will, the Hall children. Decedent had four distributees, one of whom was an incompetent, Lois A. Lucas. Appellant Duffy was appointed guardian ad litem for the incompetent in the probate proceedings. The other three distributees appeared by other attorneys. Objections to the probate of the will were filed in the Surrogate's Court by decedent's distributees.

Although the parties were unable to work out a settlement with Schmieder, a settlement was arrived at between the objectant distributees and the legatees. Under that settlement the distributees withdrew their objections to the probate in consideration of the sum of $165,000 to be created and held as indicated below. Specified attorneys' fees were to be paid out of the settlement fund, including $35,000 to appellant guardian ad litem as compensation for his services. Apart from an immediate payment of $18,000 on account to the guardian ad litem and $4,500 to the Public Administrator, the remaining $142,500 was to be earmarked out of a Massachusetts *inter vivos* trust created by decedent. The earmarked fund was to be "for the benefit of the objectants and their counsel, including the guardian ad litem, and the attorney for the Public Administrator" in specified amounts. The settlement agreement provided that the earmarked fund should be invaded for purposes of defraying the Schmieder claims (including claims by the alien property custodian) and expenses in connection therewith only after the assets of the estate have been completely exhausted. The earmarked fund was to be retained until a final determination of all the Schmieder claims. The settlement, embodied in a written stipulation dated November 16, 1972, was approved by the Surrogate's decree dated December 27, 1972 and entered January 4, 1973. That decree admitted the will to probate subject to the terms of the stipulation of settlement.

Mr. Schmieder was prosecuting an action in the Federal courts to recover from the Dwyer estate and the Halls the property he had transferred, or its proceeds.

Under date of February 2, 1973 Mr. Duffy entered into a letter agreement entitled "Re: Schmieder v. Hall" with Mr. Werner Galleski, Mr. Schmieder's attorney, agreeing to be Mr. Galleski's trial counsel "herein". Under this agreement Mr. Schmieder would consent to a release of the $142,500 earmarked fund in favor of the payees mentioned therein and would pay out of any net recovery to Lois A. Lucas 10% of the excess of such recovery over $165,000, with some additional payment to Lois A. Lucas in another contingency. The letter ended: "No part of the foregoing

shall create any prejudice in the event that this understanding shall not be approved by the Surrogate."

Mr. Duffy sought a ruling from the Ethics Committee of the Association of the Bar of the City of New York as to the propriety of his accepting the representation of Mr.Schmieder, but that committee declined to render an opinion.

When the letter agreement of February 2, 1973 was presented to him, Surrogate DiFALCO said: "If the guardian ad litem sought to change sides in the Surrogate's Court, the court would unquestionably deny his application. We are without jurisdiction to pass upon the application of this guardian for approval of his participation as trial counsel in the Federal court."

Thereafter on an application to enjoin the guardian ad litem from in any way making available to Mr. Galleski or Mr. Schmieder any material obtained by the guardian as a result of the discovery proceedings in the Surrogate's Court, Surrogate DiFALCO said in a decision dated March 15, 1974:

"These motions bring before the court again the application of the guardian ad litem to 'change sides' in this litigation. This permission was previously denied. In my prior decision, denying permission to act as trial counsel, I did not deem it necessary to prohibit any attorney who has acquired material, documents, papers, records, notes or memoranda in the course of disclosure proceedings here from turning over these documents to a person whose claim may be adverse to this estate in litigation pending in another court. In my view a denial of this application spoke for itself. The original decision is adhered to.

"Implicit in the prior decision of this court was a denial of the second motion to conclude a separate settlement of the rights of an incompetent under a stipulation entered in the probate proceeding. As previously stated the 'earmarked' fund set aside in the probate contest must await the outcome of the determination of the claim now pending in the Federal Courts of New York and Massachusetts. A separate settlement was not within the purview of the stipulation."

Surrogate DiFALCO declined to exercise any jurisdiction with respect to Mr. Duffy's representing Mr. Schmieder in

his lawsuit in the Federal court against the Halls and the Dwyer estate saying that that was a matter for the Federal court. In the United States District Court for the Southern District of New York, Judge KNAPP permitted Mr. Duffy to represent Mr. Schmieder on condition that a stipulation be entered into between Mr. Duffy and Messrs. Galleski and Schmieder, eliminating the necessity for the Surrogate's approval, and adding a paragraph to the stipulation of settlement clarifying that the $142,500 earmarked fund should be paid to the persons entitled thereto before any money is collected by Schmieder and Galleski out of the Dwyer estate in the Federal action or in the action Mr. Schmieder was apparently pursuing in Massachusetts with respect to the *inter vivos* trust.

Ultimately Mr. Schmieder and his estate were unsuccessful in their litigations (*Schmieder v Hall,* 421 F Supp 1208, affd 545 F2d 768; *Matter of Dwyer,* 57 AD2d 772; *Galleski v Webber,* US Dist Ct, Mass, June 26, 1979, No. 71-872-J); the earmarked fund was distributed; the guardian, Mr. Duffy, was paid the $17,000 balance of his allowance in December, 1979. By that time the guardian's ward Lois A. Lucas was dead, having died in 1974, and so was Mr. Schmieder, he having died in 1977.

And now the dispute revolves about attorneys' fees and guardian's compensation. (Shades of *Jarndyce v Jarndyce!*)

Mr. Galleski, as ancillary administrator *c. t. a.* of Mr. Schmieder's estate, brought a proceeding in the Surrogate's Court for reimbursement of fees for services rendered allegedly by himself and two other attorneys, including Mr. Duffy. The services alleged to have been rendered by Mr. Duffy related to the necessity for and the filing of gift tax returns with respect to the transfer by Schmieder to the decedent. Called as a witness, Mr. Duffy testified in that proceeding on July 22, 1980 as to tax services which he said were rendered in the latter part of 1972, i.e., before the decree of January 4, 1973 approving his fee as guardian ad litem.

Thereupon, the attorneys for the Dwyer estate moved for an order pursuant to CPLR 5015 (subd [a], par 3) vacating the portion of the settlement and decree that provided for

compensation to Mr. Duffy by the Dwyer estate and directing that Mr. Duffy return to the estate all such compensation which he had received plus interest. After receiving opposing affidavits, the Surrogate rendered the decision and order now appealed from directing Mr. Duffy to return to the estate the sum of $40,298 (presumably compensation and interest).

It is not surprising that the Surrogate was disturbed by the guardian ad litem's conduct here. It is most unusual, and usually improper, for a guardian ad litem for an incompetent to represent another party in the same matter, especially a party with to some extent an arguably conflicting interest. There were after all other competent parties, the other distributees, with the same interest as the incompetent in the case; and they were ultimately represented by attorneys. An important object to be accomplished by the appointment of a separate guardian ad litem for the incompetent is for someone to represent the incompetent and no one else.

The provisions of the stipulation of settlement do not eliminate the objection: For one thing, if Mr. Schmieder was successful in his litigations, the alien property custodian or his successor might well have a claim which might wipe out the claims of the distributees pursuant to the stipulation. Again the earmarked fund could not be paid to the beneficiaries while the litigation was pending — a litigation Mr. Duffy was pursuing on behalf of Mr. Schmieder, and which delayed any distribution until long after Mr. Duffy's ward was dead. Not quite so obvious but still real were the possibilities of conflict in relation to the gift tax matters.

The determination of whether a fiduciary has improperly acted in a conflicting situation does not depend on a careful weighing of the advantages and disadvantages of the conduct. As Judge CARDOZO said in *Wendt v Fischer* (243 NY 439, 443-444): "This is no sufficient answer by a trustee forgetful of his duty. The law 'does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to

represent, without undertaking to deal with the question of abstract justice in the particular case' (*Munson* v. *Syracuse, etc., R. R. Co., supra,* at p. 74; cf. *Dutton* v. *Willner,* 52 N. Y. 312, 319). Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion."

In *Matter of Merrick* (107 Misc 2d 988, 990) Surrogate SIGNORELLI said:

"The relation of a guardian ad litem to his ward 'is in essence the same as that of a regularly retained attorney to an adult client.' (*Matter of Curley,* 161 Misc 391, 398.) An attorney should not accept employment from a client which has the potential of adversely affecting his judgment on behalf of another client * * *

"An attorney may only represent multiple clients if it is obvious that he can adequately represent the interest of each, and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent judgment. (DR 5-105, subd [C].) Since the guardian ad litem's wards were under a disability, they could not legally give such consent. Therefore, the better course would have been for the guardian ad litem to have disqualified himself immediately, because 'even if the interests of these parties were not adverse, the appearance of representing conflicting interests would be enough to warrant disqualification.' "

The Lawyer's Code of Professional Responsibility, DR 5-105 (A), forbids a lawyer from accepting multiple employment "if it would be likely to involve him in representing differing interests" without full disclosure to and consent from each of the clients. The difficulties of such a consent in the case of an incompetent ward are obvious.

The present appeal presents a number of procedural and substantive problems. These include:

A. Whether the Surrogate could make the order appealed from in this motion incident to a proceeding by Mr. Galleski for attorneys' fees.

B. Whether a further evidentiary hearing is necessary to resolve issues of fact.

C. Whether the movants, the executors of decedent's estate, have standing to make this application.

D. Whether and the extent to which the payments of compensation to the guardian ad litem are protected by the decree of January 4, 1973, or whether that decree, insofar as it relates to approval of the guardian's compensation, is subject to any infirmity because of failure to make full disclosure to the Surrogate of Mr. Duffy's conflicting activities, particularly those relating to the gift tax returns.

### A. THE PRESENT PROCEEDING

The application by the attorneys for the Dwyer estate to vacate the relevant portion of the 1973 stipulation of settlement and decree was made by notice of motion more or less incident to the proceeding instituted by Mr. Galleski for attorneys' fees. In form at least Mr. Duffy had not been a party to the Galleski proceeding. There was no new citation, or other customary original process of the Surrogate's Court. (See SCPA 203.)

■ We do not think that that invalidates this proceeding. SCPA 202 provides: "The proceedings enumerated in this act shall not be deemed exclusive and the court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law, *notwithstanding that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding.*" (Emphasis mine.)

The notice of motion was addressed to Mr. Duffy as well as to Mr. Galleski's attorney. Mr. Duffy asked for and was granted an opportunity to submit affidavits on the merits in opposition to the application, which he did. Thus Mr. Duffy had full notice of the application. Any irregularities with respect to the failure to obtain new original process directed to him must be deemed waived, if indeed the notice of motion did not by common consent become adequate process.

### B. WHETHER EVIDENTIARY HEARING IS NECESSARY

SCPA 203 provides: "All proceedings are special proceedings". CPLR 409 (subd [b]) provides with respect to special proceedings: "(b) Summary determination. The

court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised. The court may make any orders permitted on a motion for summary judgment."

The rule is thus the same as on a motion for summary judgment — triable material issues of fact cannot be determined on affidavits but must be referred to an evidentiary hearing for resolution. (CPLR 3212, subd [b].) Of course many incidental collateral matters can be and are decided on affidavits. The material issues cannot be so decided if there is an issue of fact. Here the proceeding was to set aside a decree on the basis of "fraud, misrepresentation, or other misconduct of an adverse party". (CPLR 5015, subd [a], par 3.) Whether there was such "fraud, misrepresentation or other misconduct" is obviously a basic material issue; and if an issue of fact is raised as to that, there must be an evidentiary hearing. As we discuss below, the same considerations apply to the question whether the estate has a sufficient interest in the matter to give it standing to make this application.

■ In the present case when the Surrogate granted Mr. Duffy's request (through Mr. Galleski's attorney) for time to file a surreply, the Surrogate said that if either of the parties wanted to make further testimony, the court would set it down for further testimony. Apparently no such request was ever received. We do not think this obviates the necessity for an evidentiary hearing as to material issues of fact. The obligation of the court not to decide material issues of fact on affidavits does not depend on the request of parties for an evidentiary hearing. If facts sufficient to require a trial on issues of fact appear, "the motion [for summary judgment] shall be denied". (CPLR 3212, subd [b].) Especially in so sensitive a matter as this, involving misconduct by an attorney, we should be particularly careful not to deprive the parties of an opportunity to have a full exploration at an evidentiary hearing of disputed material issues of fact.

We consider now the extent to which there are indeed disputed material issues of fact.

## C. INTEREST AND STANDING OF THE ESTATE

The order appealed from directs Mr. Duffy to pay the amount of his compensation with interest, $40,298, to the estate of Helen B. Dwyer. It is argued that the estate has no interest in the allowance, as that allowance came out of the objectants' share and the earmarked fund was solely "for the benefit of the objectants and their counsel, including the guardian ad litem and the attorney for the Public Administrator." If that is correct, it might require a reversal, and denial of the motion to vacate the relevant portion of the settlement and decree and to direct Mr. Duffy to return to the estate his compensation.

On the face of the papers there is a rather persuasive argument that indeed the estate has no interest in the repayment of the allowance awarded to Mr. Duffy. Thus the stipulation of settlement provided that: *"The objectants shall be entitled* to the sum of One Hundred Sixty-five Thousand Dollars ($165,000) without any diminution for Federal or State estate taxes, inclusive of all fees and disbursements payable to the attorneys for the objectants, Atkinson, Stewart, and Montgomery, the allowance of the guardian ad litem as fixed by the court, and the allowance to the attorney for the Public Administrator of New York County, as agreed among the objectants, at Ten Thousand Dollars ($10,000) for the services rendered for the benefit of the estate." (Emphasis mine.) And the original oral statement of the settlement in November, 1971 contained a substantially similar statement, except that the amount of the proposed settlement was then $150,000. However, other factors cast some doubt on the suggestion that the estate has no interest in the guardian ad litem's allowance because it came out of the objectants' share. It is not clear whether the objectants' share was arrived at first and then attorneys' fees determined, or whether the objectants' share was arrived at by adding up predetermined amounts to be paid to the objectants and the attorneys. Although the guardian's fee was to be fixed by the Surrogate, and the guardian furnished the court with an affidavit of services, the stipulation of settlement stated the precise amount of the guardian's fee. That stipulation was signed, among others, by the attorneys for the proponents, i.e., the prelim-

inary executors of the decedent's estate. The Surrogate approved the compensation in the precise amount requested payable precisely as the stipulation provided.

Further, in his affidavit of services requesting the $35,000 in accordance with the stipulation, the guardian stated among other things: "I believe that my services conferred a substantial benefit upon this *estate* by, in effect, securing for its benefit the assets of the decedent's *inter vivos* trust — a fund in excess of $600,000 * * * Based upon the time and effort expended and the results thereof, I believe that the fair and reasonable value of my services is at least $35,000, and I have discussed this amount with the attorneys for the *estate* and with the attorneys for the competent objectants, and they have advised me that they would have no objection to this Court's fixing my fee in that amount." (Emphasis on "estate" mine.)

Further the Court of Appeals has given a very broad interpretation of the phrase "any interested person" upon whose motion a court may relieve a party from a judgment under CPLR 5015 (subd [a]). (See *Oppenheimer v Westcott*, 47 NY2d 595.)

And we should not take too narrow a view of standing when a question is raised as to whether the Surrogate's own fiduciary appointee, the guardian for an incompetent, has acted properly.

In the circumstances, we cannot say that the estate has no interest in the guardian's compensation. We think an evidentiary hearing is necessary to determine whether the parties understood that it was the objectants who were paying the guardian's compensation out of their share, or whether it was their understanding, at least in part, that the estate was paying the guardian's compensation.

If it becomes necessary, we do not exclude the possibility of adding the objectants to the proceeding so that all interested parties may be before the court.

### D. THE PRECLUSIVE EFFECT OF THE JANUARY 4, 1973 DECREE

The compensation which the order appealed from directs to be refunded was paid pursuant to a decree of the Surrogate's Court rendered about nine years before the order of

refund now appealed from. The 1973 decree was a final decree disposing of a separate special proceeding — the probate proceeding. It is a final judgment binding upon all parties to it and the court itself. Unless some recognized basis is shown for setting that decree aside in whole or in part, that decree settles the propriety of the payment at least as affected by events before the date of the decree.

The motion to vacate the relevant portion of the 1973 decree was made under CPLR 5015, which provides in part:

"(a) On motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of * * *

"3. fraud, misrepresentation, or other misconduct of an adverse party".

It is the claim of the movants that there was no disclosure to the Surrogate at the time of that decree of Mr. Duffy's actions on behalf of Mr. Schmieder and in opposition to the estate with respect to the gift tax returns.

■ There appears to be no doubt that there was no such disclosure at the time of the decree. But appellant Mr. Duffy says there was nothing to disclose as he had not done anything in relation to the gift tax returns prior to the decree. As we have seen, Mr. Duffy testified in the Galleski proceeding essentially that he had helped Mr. Galleski with respect to the gift tax returns late in 1972. However, he contends that due to the hurried circumstances of his appearance as a witness and his unrefreshed recollections, he was mistaken in saying that he had helped with the gift tax return in 1972, and that his only services came after the decree approving the compensation, so that there was nothing to disclose to the Surrogate at the time of the signing of the decree. This affidavit created a clear issue of fact as to which Mr. Duffy was entitled to an evidentiary hearing. His right to this evidentiary hearing is not met by the fact that he had previously testified orally in rather unsatisfactory circumstances in a proceeding to which he was not formally a party, and in which the propriety of his compensation as guardian ad litem was not an issue.

If it should be found that he had performed services or agreed to perform services in connection with tax matters for Mr. Schmieder before the Surrogate's decree, there would remain the question of the materiality of the failure to disclose that fact, and whether the standard of materiality to be applied on an application to vacate a decree approving a guardian's fee is the same as that to be applied where there is no such decree. (Cf. *Wendt v Fischer,* 243 NY 439, 443, *supra.*)

It is clear that Mr. Galleski was trying, among other things, to get the Internal Revenue Service to impose gift tax liability on the Dwyer estate on theories of transferee liability, assumption by the donee of the gift tax liability, and filing of fraudulent returns by the donee, the decedent Helen B. Dwyer. Mr. Duffy denies that he knew of at least some of Mr. Galleski's correspondence with the Internal Revenue Service and states that it does not reflect Mr. Duffy's views or understanding of what Mr. Galleski asked him to do on Mr. Schmieder's behalf.

We do not now express an opinion as to the materiality of Mr. Duffy's gift tax work for Mr. Schmieder or his failure to disclose the fact of such work, if any, before the January 4, 1973 decree to any possible vacatur of that decree.

All these matters require an evidentiary hearing.

The parties have assumed that United States District Judge KNAPP's approval of Mr. Duffy's participation in the action in the Federal court on Mr. Schmieder's behalf forecloses further inquiry as to the propriety of that conduct.

Nor has there been any contention on the record before us as to the bearing, if any, of Mr. Duffy's tax services to Mr. Schmieder rendered after the January 4, 1973 decree approving his compensation.

The order of the Surrogate's Court, New York County (LAMBERT, S.), entered May 7, 1982 directing appellant James P. Duffy, III, to pay to the estate of Helen B. Dwyer the sum of $40,298 and adjudging that the estate may enter judgment against him in that amount, is reversed, on the law, without costs, and the matter is remanded for an evidentiary hearing on the material issues of fact.

KUPFERMAN, J. P. (concurring). I do not take exception to the excellent analysis of this matter by my colleague, Mr. Justice SILVERMAN. However, I would point out that the specific material issues for which there is a remand for a hearing, were not in such form presented to the Surrogate, and, therefore, at the time it was sufficient for the Surrogate to ask whether either of the parties wanted further testimony. When the parties are satisfied that oral testimony is unnecessary, the court does not have any reason to request it until a specific issue is encountered which may need further development.

Further, it is not every situation that raises a conflict of interest. Of course, one cannot serve two masters (Matthew 6:24) but if a lawyer may represent both the husband and wife in a separation settlement (*Levine v Levine,* 56 NY2d 42) it may be that appellant Duffy could have proceeded as he did in the peculiar circumstances of this matter, inasmuch as the alleged impingement on the rights of his ward was exceedingly remote. However, this will be further explored at the evidentiary hearing, which this court has directed.

SANDLER, LYNCH and MILONAS, JJ., concur with SILVERMAN, J.; KUPFERMAN, J. P., concurs in an opinion.

Order, Surrogate's Court, New York County, entered on May 7, 1982, unanimously reversed, on the law, without costs and without disbursements, and the matter is remanded for an evidentiary hearing on the material issues of fact.